269 N.J. Super. 203 (1993)
634 A.2d 1371
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOSEPH M. BOWEN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted November 3, 1993.
Decided December 20, 1993.
*204 Before Judges PRESSLER, BROCHIN and KLEINER.
Zulima V. Farber, Public Defender, attorney for appellant (William E. Norris, of counsel and on the brief).
Fred DeVesa, Acting Attorney General, attorney for respondent (Larry R. Etzweiler, Deputy Attorney General, of counsel and on the brief).
The opinion of the Court was delivered by KLEINER, J.S.C. (temporarily assigned).
Defendant Joseph M. Bowen and his paramour, R.P.,[1] were charged in a two-count Salem County indictment with criminal conduct involving T.P., the six year old daughter of R.P. Count I of the indictment charged Bowen with first degree aggravated sexual assault pursuant to N.J.S.A. 2C:14-2a. Count II charged Bowen and R.P. with third degree endangering the welfare of a child, T.P., pursuant to N.J.S.A. 2C:24-4a.
*205 Bowen entered a plea of not guilty on July 16, 1990 and this matter was ultimately scheduled for trial on February 5, 1991. On that date a jury was selected and the court proceeded to conduct a hearing pertaining to the admissibility of certain hearsay statements allegedly made by the child victim, T.P., during the course of the pre-indictment investigation, Evid.R. 63(33) [now N.J.R.E. 803(c)(27)] and to the admissibility of a statement given by defendant in a post-arrest custodial interview, Evid.R. 8 [now N.J.R.E. 104].
On the morning of February 6, 1991, the trial of co-defendant R.P. was severed as the State consented to the admission of R.P. into the Salem County Pre-Trial Intervention Program.
After Bowen's request for a trial postponement was denied, his counsel sought to present a plea of guilty to Count I of the indictment pursuant to a new plea offer tendered to Bowen by the State. The new plea offer specifically provided that in exchange for a plea of guilty to Count I, the State would recommend that the court sentence Bowen as a second degree offender on Count I, and that Count II of the indictment would be dismissed.[2]
The court refused to permit this plea to be entered as the "plea offer cut-off date" had expired. The trial commenced that day and on February 8, 1991, the jury returned a verdict of guilty on both counts of the indictment.
On August 23, 1991, Bowen filed a motion supported by affidavits, seeking to vacate the guilty verdict and to allow the entry of a plea of guilty to Count I in accordance with the terms of the plea negotiation of February 7, 1991, or alternatively, to be sentenced as a second degree offender. The motion was rejected in its entirety by the court.
On January 6, 1992, Bowen was sentenced on Count I to the presumptive custodial term for a first degree crime of fifteen *206 years and on Count II, to the presumptive custodial term of four years for a third degree crime to be served concurrently with the sentence imposed on Count I. Bowen was also ordered to pay $500 and $30 to the Violent Crimes Compensation Board on the respective counts of the indictment.
On appeal, defendant asserts the following points of error:
POINT I THE FAILURE OF THE TRIAL COURT TO PERMIT THE DEFENDANT TO ENTER A PLEA OF GUILTY ON THE DAY OF TRIAL, DENIED HIM DUE PROCESS OF LAW.
POINT II THE TRIAL COURT'S DENIAL OF DEFENSE MOTION TO BE TREATED AS A SECOND DEGREE OFFENDER WAS A DENIAL OF DUE PROCESS OF LAW.
POINT III THE DEFENDANT'S SENTENCE WAS EXCESSIVE AND ILLEGAL.
This appeal does not require a review of the graphic evidence presented at trial which unquestionably established the defendant's guilt. Suffice it to say, Bowen was twenty-five years old and resided with R.P. and their three year old son, as well as R.P.'s two children from former relationships, a teenage son and the victim, T.P.
T.P. shared a bedroom with Bowen and R.P. She often would leave her own bed and sleep with Bowen and R.P. Over an extended period of time, Bowen engaged in sexual acts with T.P., including vaginal intercourse and cunnilingus. T.P. would perform fellatio upon Bowen and would masturbate him. These acts occurred while R.P. shared the same bed. T.P. would also watch Bowen and R.P. engage in sexual intercourse. These sexual activities were discovered when school authorities observed T.P. manifesting unusual behavior. The school authorities eventually notified the Division of Youth and Family Services (D.Y.F.S.) and through an investigation conducted by the prosecutor, with the assistance of D.Y.F.S. personnel and school authorities, the defendant and R.P. were arrested and were ultimately indicted.
The pre-sentence report reveals that Bowen was employed as a helper on a pig farm cleaning buildings and grinding feed for the animals. He has a ninth grade education but was enrolled in a *207 special education program. He is semi-literate and was born without a left ear drum and has limited hearing in his right ear. Bowen has had no prior contact with the criminal justice system, either as an adult or as a juvenile. The defense proffered that a defense evaluation conducted by a psychiatrist established that Bowen has an IQ of sixty-five, indicating mild mental retardation.
Plea offers and plea agreements are terms that emanate from the informal negotiations between the State and the accused which have become ingrained as an essential adjunct of the criminal justice system under the rubric known as plea bargaining. As noted in State v. Taylor, 80 N.J. 353, 360-61, 403 A.2d 889 (1979):
Plea bargaining has become firmly institutionalized in this State as a legitimate, respectable and pragmatic tool in the efficient and fair administration of criminal justice. Courts across the country have adopted plea bargaining as an appropriate accommodation of the conflicting interests of society and persons accused of crime and as a needed response to an ever-burgeoning case load.

[Citations omitted.]
The "plea agreement cut-off date" is a relatively recent concept which is now utilized as an administrative component of the criminal justice system in fourteen of the twenty-one counties in New Jersey. A plea cut-off date is a court-imposed date by which the accused must accept a plea bargain offered by the State. After the plea cut-off date, further plea negotiations are foreclosed, and the accused must either proceed to trial or plead guilty to the indictment without the benefit of a plea bargain. Although plea negotiation is specifically sanctioned by our court rules, R. 3:9-3, these rules do not, as yet, provide for, or even mention, a plea cut-off date. However, on November 30, 1993, the Supreme Court of New Jersey entered an order which provides:
IT IS ORDERED that pending completion of the formal 1992-94 Rule amendment cycle and the further Order of the Court, Rule 3:9-3 is hereby clarified to permit the imposition of a limitation on the time during which trial courts may accept a negotiated plea of guilty pursuant to a plan described in Criminal Division Operating Standard III; and
It is further ORDERED that the foregoing shall be effective only in those counties in which the Assignment Judge approves the limitation.
*208 The concept of the plea cut-off date has been incorporated as permissible within the Federal Rules of Criminal Procedure. Fed.R.Crim.P. 11(e)(5), "Time of Plea Agreement Procedure," provides, "Except for good cause shown, notification to the court of the evidence of a plea agreement shall be given at the arraignment or at such other time, prior to trial, as may be fixed by the court." United States v. Moore, 916 F.2d 1131, 1136 n. 11 (6th Cir.1990); United States v. Ellis, 547 F.2d 863, 868 (5th Cir.1977).
In California, where criminal proceedings follow the Federal Rules, the refusal of a trial judge to accept a plea bargain after the time limitation imposed had passed was held a proper exercise of discretion. People v. Cobb, 139 Cal. App.3d 578, 585, 188 Cal. Rptr. 712, 716-17 (Cal.Ct.App. 1983). Yet the absence of approval by the highest court or appropriate rule making body has been deemed sufficient to prevent implementation of the concept. Hare v. Super. Court in and for Cty. of Pima, 133 Ariz. 540, 652 P.2d 1387 (1982).
Prior to January 1981, the New Jersey Supreme Court formed a Criminal Delay Reduction Planning Committee in each county charged with the responsibility of drafting plans designed to improve efficiency in the disposition of criminal proceedings.
Such a plan was drafted in Salem County under the overall direction of the Assignment Judge of Vicinage 1 assisted by the criminal assignment judge. This plan, as formulated, adopted the concept of a plea cut-off date and utilized the pre-trial conference date as the final date for the accused to accept a plea bargain offered by the State. The Salem County plan expressed as its overall goal: "When a case is reached for trial, it shall be tried, unless the court, for reasons permissible, shall allow its continuance." The plan was submitted to the Supreme Court for approval.
On January 2, 1981, the New Jersey Supreme court issued an order authorizing several of the county plans, including specifically the Salem County plan, to become operative. That order required the approved plans to be filed with the county clerk and to be *209 available for public inspection. See Order Re: Criminal Case Disposition, 107 N.J.L.J. 48 (1981). Thereafter, a summary of the implemented plans, including the Salem County plan, was published by the Administrative Office of the Courts in the New Jersey Law Journal. Summaries of Speedy Trial Plans, 107 N.J.L.J. 369 (1981). This summary specifically noted that in Salem County, as well as Atlantic, Cape May and Cumberland Counties, all part of Vicinage 1,[3] the "[p]retrial conference shall be scheduled within forty-five days after the plea to the indictment and shall cut off any further plea negotiations." Id. at 377 (emphasis added).
Salem County has operated its criminal courts pursuant to this plan since its initial submission in 1980, and with authorization of the Supreme Court since January 1981.
The record on appeal reveals that the development of similar plans in the several counties ultimately led to the draft of Standards for the Operation of the New Jersey Criminal Division of Superior Court (Standards). This draft and its periodic revisions were endorsed by the Judicial Conference of 1980, 1986 and 1990 and were thoroughly debated by the Conference of Criminal Presiding Judges. See Criminal Division White Paper, 133 N.J.L.J. 1160, 1161 (1993).
The Standards are divided into seven sections. Section III is specifically relevant to the issues raised on appeal.
III. Upon indictment, the court should schedule an event with counsel present to satisfy arraignment requirements and to inform the court regarding the disposition or future procedural needs of the case. If not previously done, such a conference should be preceded by an intake interview by court staff. Future events should be scheduled, not by rote, but according to the differentiated needs of each case. Reasonable adjournments should be granted to avoid meaningless events.
Before a case is set for trial, a pre-trial conference should be held in open court with the defendant present. Only after discovery has been exchanged, and necessary motions decided, a plea cut-off rule should be implemented and the *210 defendant advised of the offer, the sentence authorized by statute and that negotiations will terminate as ordered by the court. Trial lists must be credible, certain, and limited in number. The priority of cases on the trial list should be set by and enforced by the judge only, and not unduly influenced by either party.
The Standards actually embody the practice in Salem County since that county's proposed plan was adopted and approved by the Supreme Court as of January 1, 1981.
Within the framework of the historical background of the use of a plea cut-off date in Salem County, we are able to evaluate the arguments advanced by the defendant in this appeal.
As noted, after jury selection defense counsel requested a trial postponement due to a "late" discovery problem which was denied. Defense counsel then sought the opportunity to allow defendant to enter a plea pursuant to a plea bargain offered by the State.
The entire discourse between defense counsel Stomel and the court is helpful in reaching our conclusion:
MR. STOMEL: The other thing I would like to place on the record is this morning I advised the Court that based upon these discovery situations, getting new information and the fact that [R.P.'s] matter was being severed and her matter was being disposed of by some legal matter, I finally had an opportunity to sit down with Mr. Bowen explaining all these things to him at great length. At that time, he verbalized to me in light of the prosecutor's position in the change in the plea agreement that he was desirous of entering a plea to a second degree offense with a term not to exceed seven years. I can represent to the court that Mr. Bowen  I had Mr. Bowen examined, and the determination was made by Dr. Bogacki, who is the head of the division of pyschology [sic] at Cooper Hospital that Mr. Bowen has a full scale IQ of 65 and has a mild range, in his opinion, of mental retardation.
Your Honor, in all candor, it takes an inordinate amount of time to explain anything at great length to Mr. Bowen. Until Mr. Bowen sat in the courtroom yesterday and actually heard from the witness's mouths what the discovery was, even after I had gone over it with him and your sheriff's officers can attest to the fact that I religiously one time a week would bring Mr. Bowen over and talk with him. Only after yesterday and hearing these things come out of these people and my discussion did he actually conceptualize what facts were going to be presented to a jury.
Now, in considering the fact of his mental incapability or difficulty, considering the fact that all these other discovery problems came to light, considering the fact of the severance, I would ask the Court to allow him to enter a plea of guilty to a second degree offense because it's not a situation where you have a defendant who fully understands what's going on, fully whatever time he comes to court. Most of *211 my conversations with Mr. Bowen, your Honor, always start out at phase one, and every time I talk to him, I have to go back to phase one. So, your Honor, that I think in the interest of justice, both for the victim and for Mr. Bowen, considering his mental difficulties, he be allowed to plead guilty to a second degree offense.
THE COURT: Your motion is denied. Every defendant has a right to two things. He has lots of rights, and we spend most of our time trying to protect those rights. One of the things he has a right to is a fair trial, certainly, and he has a right to be able to plead guilty. He doesn't have a vested right in a plea bargain. He doesn't have a control over the court with reference to what he wants to do and when he wants to do it. This court has had a longstanding policy, and everybody knows about that. It will not accept plea bargains from defendants offered by the State after the first listing of the matter. As a matter of fact, it's been relaxed to the point where we're going to have to do something about it because everybody runs around trying to get postponements of the first trial listing so they can get postponed, so they can get plea bargains. Maybe that's in the interest of justice, maybe not. I don't know.
This case has been on the trial list  my guess is it three months ago. I could be wrong, but it's pretty close to that time, and we can't pull up the computer at the moment because that doesn't work like everything else. I guess nowadays everybody knows what this case was about. Everybody knows what the evidence was going to be. Nothing has been brought to my attention in any way that suggests with proper diligence, all of these things could not have been determined ahead of time. Mr. Stomel suggests that his client has a difficult problem, and I'm sympathetic with that difficult problem, but that problem is prevalent today just as it was yesterday, just as it was last week.
If counsel wanted to avail itself of a plea bargain and if the defendant wanted to avail himself of a plea bargain, he had every right to do it and opportunity to do it in the last two to three months while has been pending on the trial list. He has a right today to plead without recommendation, and the court won't stand in the way of that right, but absent that, it's going to go ahead with the trial. We're going to go ahead with this trial. Your motion is denied.
MR. BELL: Your Honor, we went over the reason why there is the plea agreement offer.
THE COURT: Mr. Bell, I'm not suggesting that your offer isn't appropriate. I'm not suggesting that the prosecutor is in any way not being just in their offer. I'm telling you that if the defendant wants to plead at this time, he can plead without recommendation. I'm not going to accept the plea bargain in the matter. I brought this jury in at 9:30. It's 10:30 now. It's time we got started, folks. Let's take five minutes to get your business in order, and we're going to get going with it.
This exchange clearly demonstrates Bowen sought to accept a new plea offer from the State which offer was tendered after an Evid.R. 8 hearing [now N.J.R.E. 104]. R. 3:13-1(b) provides: "Hearings to resolve issues relating to the admissibility of statements *212 by defendant ... may be held at any time prior to trial and, upon a showing of good cause, hearings as to admissibility of other evidence may also be so held." [Emphasis added.]
In this case, the Evid.R. 8 hearing concerned the admissibility of the custodial statement of the defendant and the admissibility of the hearsay statements of the six year old victim.
It was clearly appropriate under the then existent Salem County plan, and under the Standards, that a plea be offered to the defendant at that time as it was only the previous day that all "necessary motions" had been decided.
Although it is clear that a new plea offer was extended to defendant, the content of the prior plea offer is not before this court. Yet it is inferable that some aspect of the Evid.R. 8 hearing may have stimulated the new plea offer. We draw that inference from the fact that immediately after that pre-trial hearing, the State not only offered a new plea bargain to the defendant, but consented to the admission of the co-defendant R.P. into P.T.I.
Allowing the defendant to accept the new plea offer would not have contravened the philosophy of the Salem County plan, or the proposed Standards, as the acceptance of the plea bargain would have followed the disposition of a necessary pre-trial motion. R. 3:13-1(b). In fact, acceptance of the plea would have been consistent with one of the reasons for R. 3:13-1(b). "[A]dverse determinations of these questions [admissibility of defendant's statements], where they constitute, in effect, the sole defense, may result in a defendant's decision to plead guilty." Pressler, Current N.J. Court Rules, comment 2 on R. 3:13-1 (1994). As noted by defense counsel, it was only after Bowen actually heard the testimony to be presented at trial that he was able to comprehend the severity of the proceedings. Predictably the "cut-off date" will eventually be adopted as a sanctioned procedural event by the Rules Governing the Courts of the State of New Jersey. If adopted, the "cut-off date" rule as enacted should be drafted to *213 specifically permit a plea offer at the conclusion of any pre-trial hearing conducted immediately prior to trial.
Were the plea cut-off rule adopted as a court rule, its enforcement would be tempered by R. 1:1-2:
The rules in Part I through Part VIII, inclusive, shall be construed to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay. Unless otherwise stated, any rule may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice. In the absence of rule, the court may proceed in any manner compatible with these purposes.

[Emphasis added.]
Since the Salem County plea cut-off rule was not then a part of the Rules Governing the Courts of the State of New Jersey, its enforcement was discretionary, and the last sentence of R. 1:1-2 is significant. The exercise of the court's discretion should have been guided by a need to "secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." R. 1:1-2.
We need not decide the issues raised on constitutional grounds. Although the defendant framed this point of error in terms of a "deprivation of due process," he has failed to cite any judicial authority to support that argument. In fact, as noted, plea cut-off dates have withstood challenge and are embodied in the Federal Rules of Criminal Procedure.
We are satisfied that the denial to the defendant of the opportunity to enter a plea of guilty to the new plea offer, which if ultimately accepted by the court would have resulted in defendant's sentence for a crime of the second degree, in this instance was a mistaken exercise of discretion by the trial judge. We note in reaching this conclusion the comment of the court in United States v. Moore, supra, 916 F.2d at 1136 n. 11:
At oral argument, Government counsel suggested that this plea was offered after a plea deadline date set by the district court. Defense counsel denied that there was a plea deadline date, and the record before us does not resolve this dispute. The docket sheet makes no reference to a plea cut-off date, although there is a reference to a standing discovery order.

*214 Our remand on this issue is not intended to mean that rejecting a plea because it comes too late may not be a proper exercise of discretion. The problem here is that we are simply unable to ascertain from the trial judge's brief comments the precise reason why this plea was rejected. If a trial judge sets a plea cut-off date and a plea is not offered prior to that time, the trial judge may well be justified in rejecting the plea. On the other hand, if the Government makes its first plea offer to a defendant the morning of trial and defendant accepts, the rejection of the plea under those circumstances may well constitute an abuse of discretion.
Naturally, the court is still free to accept or reject a recommended sentence pursuant to a plea agreement at the time of sentence. R. 3:9-3(e).
The judgment of conviction is vacated and the matter is remanded to the trial court for the expedited scheduling of a hearing on the entry of a guilty plea pursuant to the plea offered originally by the State.
NOTES
[1] To protect the privacy interests of the minor child victim, initials have been used for the name of the child and her mother, the co-defendant.
[2] The record on appeal does not reflect the date or the content of the original plea negotiation offered by the State to defendant. The State on appeal does not deny that the plea offer of February 6, 1991 was a "new offer."
[3] Salem and Cumberland Counties are now part of Vicinage 15; Atlantic and Cape May Counties now comprise Vicinage 1.