271 N.J. Super. 369 (1994)
638 A.2d 904
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ENOCH BRIMAGE, DEFENDANT-APPELLANT. STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
CURTIS LAGRONE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted January 20, 1994.
Decided March 15, 1994.
*370 Before Judges SHEBELL and LANDAU.
Bradley J. Ferencz, Deputy Public Defender, attorney for appellants (Mr. Ferencz on the brief).
Honorable Robert W. Gluck, Middlesex County Prosecutor, attorney for respondent (Simon Louis Rosenbach, Assistant Prosecutor, of counsel and on the brief).
The opinion of the court was delivered by SHEBELL, P.J.A.D.
*371 We have consolidated for purposes of this opinion the two above captioned appeals as they both involve questions regarding the validity and application of court ordered plea cut-off dates.

THE BRIMAGE FACTS
In July 1988, defendant, Enoch Brimage, was indicted in two counts: count one, aggravated sexual assault, N.J.S.A. 2C:14-2a; and count two, endangering the welfare of a child, N.J.S.A. 2C:24-4a. He went to trial on this indictment. However, the trial ended with a hung jury in December 1989.
In July 1991, defendant was indicted in three counts: two counts of attempted burglary, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:18-2; and one count of obstructing the administration of law or other governmental function, N.J.S.A. 2C:29-1.
On December 18, 1992, at a pretrial conference, the State offered a plea bargain on the two indictments. The defendant rejected the offer on the record after being informed that there would be no further plea bargaining if he rejected the offer. The sexual assault indictment was then assigned to a judge for trial to commence on March 1, 1993. The case was expected to require approximately ten to fifteen trial days.
On March 1, 1993, the trial was adjourned because the judge assigned to the case was on trial in another matter. On that date, defendant expressed a willingness to accept the plea bargain offered by the State. Under the agreement, defendant was to plead guilty to aggravated sexual assault and serve five years of incarceration, to run consecutive to a sentence he was already serving on unrelated charges. There was to be no period of parole ineligibility and the remaining count of the indictment would be dismissed. Additionally, the burglary indictment would be dismissed at the time of sentencing. The assistant prosecutor had no objection to defendant pleading in accordance with this original plea offer.
*372 The trial judge told the defendant's attorney that permission would have to be obtained from the Presiding Judge of the Criminal Part in Middlesex County before the plea could be taken. The Presiding Judge refused to consent because it was past the trial plea cut-off date and there could be no plea bargaining so close to the date set for trial. On March 5, 1993, the Presiding Judge entered an order barring the entry of a negotiated plea of guilty.
On that same day, defendant's attorney signed a Certification setting forth the facts of this matter. On March 10, 1993, the trial judge signed an order staying defendant's trials pending the filing of an interlocutory appeal. On April 18, 1993, we granted defendant's motion for leave to appeal.

THE LAGRONE FACTS
In July 1992, defendant, Curtis Lagrone, was indicted in four counts: count one, possession of a controlled dangerous substance, N.J.S.A. 2C:35-10a(1); count two, possession with intent to distribute, N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(3); count three, distribution of a controlled dangerous substance, N.J.S.A. 2C:35-5a(1) and N.J.S.A. 2C:35-5b(3); and count four, possession of a controlled dangerous substance, N.J.S.A. 2C:35-10a(1).
The following facts as presented by defendant on appeal were adopted by the State's brief. Defendant appeared before the Presiding Judge of the Criminal Part in Middlesex County, for a trial conference, at which time a plea offer was made by the State. Defendant rejected the offer and the case was assigned to a judge for trial listing. On June 2 or 3, 1993, defendant's attorney received a call from the trial judge's criminal case manager. The manager stated that there appeared to be charges pending against defendant in addition to the indictment that was assigned to the judge's trial list. The new charges, not yet presented to a grand jury, were for drug possession and drug distribution. On June 7, 1993, defendant's attorney informed the trial judge that because of the new charges, he desired to negotiate and resolve all of the *373 matters. Defendant's attorney was told that there could be no additional plea bargaining and that the indictment would be tried on June 16, 1993. According to defendant, the trial judge indicated "that he had been assigned indictment XXX-XX-XX by ... the presiding criminal court judge for purposes of trial and trial only and that he would not entertain any plea bargaining regardless of whether there was any outstanding new charges." On June 8, 1993, the trial judge signed an order barring any further plea negotiations and denying a stay of the proceedings.
On June 11, 1993, we granted defendant's motion for leave to appeal. We also directed that "[t]he case should be calendared back to back with State v. Brimage, 271 N.J. Super. 369, 638 A.2d 904 in which motion for leave to appeal was granted on April 28, 1993."

CONTENTIONS ON APPEAL
In both appeals, the defendant and the prosecutor join in urging that we reverse the Law Division orders obstructing the entry of the negotiated pleas. It is argued that the Executive branch has the right to bring charges in criminal matters and to alter those charges, and that under the separation of powers doctrine, the Judiciary may not, for mere administrative convenience, interfere with the prosecutor's discretion by refusing to entertain a plea the prosecutor has negotiated.
It is emphasized that in the Lagrone case, the situation had been substantially altered as a result of the new charges. The argument is made that while the judge may reject a plea bargain if it violates the interests of justice, the judge's refusal to allow the prosecutor to make an offer which would include the new charges interferes with the State's right to prosecute. It is asserted that the Judiciary must give deference to the Executive when exercising judicial discretion and may only reject a plea bargain if it does not serve the interests of justice or there is an abuse of prosecutorial discretion.
*374 The State holds that "although the court has the power to control its calendar, that power should not include an ability to require the taxpayers to fund a multiple-court-day trial when a result satisfactory to the Executive can be reached in a few minutes." It urges that this is particularly true where, as in the Lagrone case, the negotiated plea was ready to be entered two weeks before the trial, thereby giving the court ample time to ready a new case for trial.
In the Brimage case, the State maintains that "a decision by the court to forbid a defendant to enter a negotiated plea on the day of trial abridges the right of the [E]xecutive to negotiate pleas of guilty." The State points to the prior hung jury as proof that "only beneficial consequences" and no "ill effects" will flow from accepting the late entry of a negotiated plea. It, therefore, concludes that the judge has abused his discretion.

APPLICABLE LAW
There is no constitutional or statutory requirement that the New Jersey judicial system recognize plea bargaining. Nonetheless, expediency resulted in plea bargaining becoming an accepted practice in New Jersey. Our Supreme Court stated it more discreetly as follows:
Plea bargaining has become firmly institutionalized in this State as a legitimate, respectable and pragmatic tool in the efficient and fair administration of criminal justice. Courts across the country have adopted plea bargaining as an appropriate accommodation of the conflicting interests of society and persons accused of crime and as a needed response to an ever-burgeoning case load.
[State v. Taylor, 80 N.J. 353, 360-361, 403 A.2d 889 (1979) (citations omitted).]
While a prosecutor may exercise discretion and enter into a plea agreement with a defendant, the sentencing judge may reject it if the interests of justice are not served. R. 3:9-3(e); State v. Todd, 238 N.J. Super. 445, 461, 570 A.2d 20 (App.Div. 1990) (citing State v. Howard, 110 N.J. 113, 123, 539 A.2d 1203 (1988)). Such a decision is in the sound discretion of the sentencing judge.
The concept of plea agreement cut-off dates and their use in New Jersey vicinages was explained in the recent case of State v. *375 Bowen, 269 N.J. Super. 203, 634 A.2d 1371 (App.Div. 1993). In that case, the court wrote:
The "plea agreement cut-off date" is a relatively recent concept which is now utilized as an administrative component of the criminal justice system in fourteen of the twenty-one counties in New Jersey. A plea cut-off date is a court-imposed date by which the accused must accept a plea bargain offered by the State. After the plea cut-off date, further plea negotiations are foreclosed, and the accused must either proceed to trial or plead guilty to the indictment without the benefit of a plea bargain. Although plea negotiation is specifically sanctioned by our court rules, R. 3:9-3, these rules do not, as yet, provide for, or even mention, a plea cut-off date.
[Id. at 207, 634 A.2d at 1373 (emphasis added).]
On November 30, 1993, after an unpublished decision of another Part of this court "questioned the authorization for the plea cut-off," our Supreme Court issued the following directive Order, signed by the Chief Justice, regarding plea cut-off dates:
IT IS ORDERED that pending completion of the formal 1992-93 Rule amendment cycle and the further Order of the Court, Rule 3:9-3 is hereby clarified to permit the imposition of a limitation on the time during which trial courts may accept a negotiated plea of guilty pursuant to a plan described in Criminal Division Operating Standard III; and
It is further ORDERED that the foregoing shall be effective only in those counties in which the Assignment Judge approves the limitation.

[135 N.J.L.J. 1357, 1358 (1993).]
The Commentary accompanying the Order provided the following:
The purpose of this Order is to validate, on an interim basis, court-imposed time limitations on plea bargaining in accordance with the Criminal Division Operating Standards. Such limitations have been implemented in many vicinages over the past few years. The Order preserves the status quo. It is not intended to resolve the underlying issues; specifically, it will not foreclose further debate when Rule amendments are considered in the Spring.
The Standards, developed by the Conference of Criminal Presiding Judges, were endorsed by the Conference of Assignment Judges after further vicinage level review, and were approved by the Supreme Court on October 20, 1992. They were published on March 29, 1993, in both the New Jersey Law Journal and the New Jersey Lawyer. The Conference of Criminal Presiding Judges, in developing the Standards, had the benefit of the views of prosecutors and defense counsel. Standard III, as adopted by the Court, provided for a plea cut-off, the purpose of which is to increase the certainty and effectiveness of trial lists by limiting last-minute *376 plea negotiations. The resulting judicially-managed plea cut-off is now in use in fourteen counties.
A recent Appellate Division decision has questioned the authorization for the plea cut-off. Without passing on the merits of the matter, the Court has decided that pending a full review, the status quo should be preserved and that this interim Order is necessary to do so. The Criminal Practice Committee, which recently disapproved plea cut-off, will include the issues for consideration in its forthcoming Rule recommendations. The matter will thereafter be subject to debate and resolution together with all other Rule recommendations. In the meantime, plea cut-offs are authorized in accordance with this interim Order.

[135 N.J.L.J. 1357, 1358 (1993) (emphasis added).]
Standard III, referred to in the Commentary, as found in the Criminal Division White Paper, 133 N.J.L.J. 1160, 1161 (1993), provides:
Upon indictment, the court should schedule an event with counsel present to satisfy arraignment requirements and to inform the court regarding the disposition or future procedural needs of the case. If not previously done, such a conference should be preceded by an intake interview by court staff. Future events should be scheduled, not by rote, but according to the differentiated needs of each case. Reasonable adjournments should be granted to avoid meaningless events.
Before a case is set for trial, a pre-trial conference should be held in open court with the defendant present. Only after discovery has been exchanged, and necessary motions decided, a plea cut-off rule should be implemented and the defendant advised of the offer, the sentence authorized by statute and that negotiations will terminate as ordered by the court. Trial lists must be credible, certain, and limited in number. The priority of cases on the trial list should be set by and enforced by the judge only, and not unduly influenced by either party.

[Ibid.]
The following is also contained in Standard III:
[W]hen fairly applied, plea cut-off is highly effective and is probably the key to the extraordinary efficiency found in several counties. Its fair application first requires 1) that all plea negotiations have been exhausted, 2) that no other action is required, (e.g., the prosecutor has seen witnesses, all necessary motions are resolved), and 3) that the defendant has been fully advised of the effects of the plea cut-off. Significant training is needed to make the procedure universally effective and fair.

[Ibid.]
Subsequent to the Order of the Supreme Court, State v. Bowen, supra, was decided. In Bowen, defendant and the co-defendant, his paramour, were charged in a two-count indictment charging *377 the aggravated sexual assault of co-defendant's six-year-old daughter. The record on appeal does not reflect the date or content of the original plea offered by the State, and rejected by the defendant. Bowen, supra, 269 N.J. Super. at 204, 634 A.2d at 1372. The trial was scheduled for February 5, 1991, and on that day, a jury was selected and an evidence hearing was conducted. Id. at 205, 634 A.2d at 1372. On the morning of February 6, 1991, the paramour's trial was severed because the State consented to her admission into the Salem County Pre-Trial Intervention Program (PTI). Id. at 205, 634 A.2d at 1372.
On that same day, defendant requested a trial postponement due to a "late" discovery problem, which was denied. Id. at 210, 634 A.2d at 1375. Defendant's attorney then sought to enter a plea of guilty to count one of the indictment pursuant to a new plea offer extended to defendant by the State. Id. at 204, 634 A.2d at 1372. The trial judge refused to permit this plea because the "plea offer cut off date" had expired. Id. at 205, 634 A.2d at 1372. The case was tried and defendant was convicted on both counts. He moved to vacate the verdict and to allow entry of his plea in accordance with the plea offer. This motion was denied. On appeal, Bowen argued that the trial judge erroneously refused to permit him to enter a plea of guilty. Id. at 205, 634 A.2d at 1372.
The Bowen court vacated the conviction and remanded the matter to the trial court. Id. at 214, 634 A.2d at 1377. It emphasized that defendant sought to accept a new plea offer tendered from the state after an Evid.R. 8 hearing. Id. at 212, 634 A.2d at 1376. The court noted that under R. 3:13-1(b), "[h]earings to resolve issues relating to the admissibility of statements by defendant ... may be held at any time prior to trial and, upon a showing of good cause, hearings as to admissibility of other evidence may also be so held." Id. at 212, 634 A.2d at 1376.
The Bowen court suggested that if a plea cut-off date rule is adopted as part of the Rules Governing the Courts of the State of New Jersey, the rule should be drafted to allow a plea offer at the *378 conclusion of any pre-trial hearing conducted immediately prior to trial. Id. at 213, 634 A.2d at 1377. It also stated that the plea cut-off rule would, if adopted, be "tempered" by R. 1:1-2, thereby permitting relaxation. Id. at 213, 634 A.2d at 1377. The court concluded that the trial judge's refusal to allow the defendant to plead guilty under the new plea offer was a mistaken exercise of discretion. Id. at 213, 634 A.2d at 1377. However, the court made it clear that at the time of sentencing, under R. 3:9-3(e), the judge is still permitted to accept or reject a recommended sentence pursuant to a plea agreement. Id. at 214, 634 A.2d at 1377.
If we were to apply directly the Bowen rationale to the trial judge's refusal to accept the negotiated plea, we might, at least in the Lagrone case, explore whether such refusal was a mistaken exercise of discretion. It was only after the original plea offer was rejected, and about two weeks before trial, that the additional charges pending against defendant were discovered. In effect, the trial judge refused to permit the prosecutor to make an offer which would include the new and previously unknown charges.
The Bowen court believed that in each plea cut-off decision, "[t]he exercise of the court's discretion should have been guided by a need to `secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay.'" Bowen, supra, 269 N.J. Super. at 213, 634 A.2d at 1377 (quoting R. 1:1-2). We do not disagree that this should be a guiding principle for the criminal justice system, and for a comprehensive scheme of plea cut-off procedures in particular.
However, we do not agree that plea cut-off decisions, if carried out under a procedure sanctioned by the Supreme Court, involving as they do discretionary judgment as to matters of administration, may be altered by an appellate tribunal unless there is a showing of patent and gross abuse of discretion constituting a miscarriage of justice. See State v. Leonardis, 73 N.J. 360, 381-83, 375 A.2d 607 (1977). Under such limited review, we perceive of few cases where the ultimate result of the mandated trial or of a plea *379 entered without a negotiated agreement will result in a miscarriage of justice sufficient to warrant intervention.
We must not concern ourselves as a reviewing court with isolated instances of judicial inefficiency, if any, occasioned by the trial of a case that might have been avoided if the plea bargain were permitted to be entered. This is a policy matter of general concern which is to be weighed in the decision as to whether, on balance, a plea cut-off system results in greater overall efficiency. It will be considered as part of the decision on whether a plea cut-off rule is to be finally adopted, and if adopted, under what circumstances it may be relaxed. Thus, we take a more restrictive view of our court's function in these circumstances than the Bowen court.
The prosecutor's assertion that the Judiciary impinges on the Executive by employing a plea cut-off rule is unfounded. Sentencing is a judicial function. State v. Spinks, 66 N.J. 568, 574, 334 A.2d 23 (1975). Plea bargaining is not a right of a defendant or the prosecution. It is an accommodation which the judicial system is free to institute or reject. Therefore, it can modify the plea bargaining structure at any time, as it has chosen to do with the November 30, 1993 Order.
In the two present cases, we are satisfied that no right of either the defendant or the State has been infringed. Further, it has not been shown that the interests of justice require our intervention.
Affirmed.