678 A.2d 1082

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v. FLORENCE HESSEN, DEFENDANT–APPELLANT.

Argued November 28, 1994—Decided July 22, 1996.

442 

*Ronny J.G. Siegal* argued the cause for appellant (*Hellring, Lindeman, Goldstein & Siegal,* attorneys; *Ms. Siegal* and *Peter H. Stoma,* of counsel and on the briefs).

*John J. Scaliti,* Assistant Prosecutor, argued the cause for respondent (*John J. Fahy,* Bergen County Prosecutor, attorney).

*Boris Moczula,* Deputy Attorney General, argued the cause for intervenor, Attorney General of New Jersey (*Deborah T. Poritz,* Attorney General, attorney).

*Robert Ramsey* argued the cause for *amicus curiae, Burbage & Ramsey,* Attorneys-at-Law (*Burbage & Ramsey,* attorneys).

PER CURIAM.

In this case, the defendant allowed a clearly intoxicated person to drive her car, in which she was a passenger. The driver caused a head-on collision with another car, killing the other driver and seriously injuring four other persons, including the defendant. The defendant was charged with the municipal court offense of "permitting" an intoxicated person to drive her vehicle. The State negotiated a plea bargain, enabling the defendant to plead guilty to the lesser charge of allowing an unlicensed driver to operate a motor vehicle.

Plea agreements are currently authorized under the rules of the Supreme Court governing practice and procedures in the municipal courts. There is an exception for "drunken driving offenses." This case requires the Court to determine whether the prohibition against plea bargaining in municipal court drunk-driving cases includes the offense of allowing or permitting an intoxicated person to drive one's car.

I

Florence Hessen was involved in a car accident on the Palisades Interstate Parkway on May 11, 1990, while riding as a passenger in her own automobile. Ms. Hessen had allowed Gerald Scher to drive her Mercedes-Benz automobile. While driving on the Palisades Interstate Highway, Scher swerved to avoid a car that he was attempting to pass, and fishtailed into the lane of oncoming traffic. Hessen's Mercedes crashed into a Mercury Lynx driven by Wayne Commins, and a van driven by Alexander Arbit. Wayne Commins was killed instantly. Arbit and the two passengers in his van were seriously injured. Ms. Hessen suffered a fractured right pelvis, lacerations and contusions.

Blood taken from Scher after the accident revealed a blood alcohol level of .163 and .175, which is considered sufficient to

indicate severe intoxication. Subsequent investigation of the accident scene revealed evidence that Scher was travelling at a speed of about 80 m.p.h. Scher was convicted of reckless manslaughter, death by auto, aggravated assault, and three counts of assault by auto. The State declined to charge Hessen as an accomplice to Scher's crimes.

Hessen was charged with the offense of allowing an intoxicated person to operate her motor vehicle, in violation of *N.J.S.A.* 39:4–50 (hereinafter referred to as an "allowing" or "permitting" offense). The matter was not placed on the trial calendar until January 1993. On June 15, 1993, defendant and the Bergen County Prosecutor and Palisades Police presented to the municipal court an application to dismiss the pending charge against defendant and institute the lesser charge of allowing an unlicensed driver to operate a motor vehicle, in violation of *N.J.S.A.* 39:3–39(b), to which defendant agreed to plead guilty. The estate of Commins, the victim of the car crash, opposed the plea bargain.

The municipal court ruled that the prohibition in Guideline 4 under *Rule* 7:4–8 barring any plea bargaining in drunk-driving cases applied to the defendant's offense of permitting an intoxicated person to drive one's car. Accordingly, it rejected the plea bargain. The Superior Court, Law Division, affirmed. This Court then certified the case and requested that the Attorney General participate in the appeal.

II

*Rule* 7:4–8 was adopted on June 29, 1990. The rule authorized generally plea bargaining in municipal courts subject to specific standards. Prior to the adoption of that rule, specifically since 1974, all plea bargaining in municipal courts had been expressly prohibited, pursuant to a directive issued by the Supreme Court. Municipal Court Bulletin Letter # 3–74, at 2.

The policy underlying that prohibition was the strong concern over the possibility of abuse in the disposition of municipal court offenses, a concern attributable to the part-time nature of the

municipal courts and the lack of professionalism in those courts. *Supreme Court Committee to Implement Plea Agreements in Municipal Courts, Final Report* (hereinafter *"Final Report"*), Exhibit F at 26 (Oct. 31, 1989) (noting that municipal courts were not required to maintain stenographic record or audio recording of proceedings and "most municipal courts did not have a prosecutor and even fewer had a public defender"). *See State v. Gallegan,* 117 *N.J.* 345, 347, 567 *A.*2d 204 (1989) (considering administrative problems arising from "current governmental structure of part-time municipal courts and prosecutors and the ever-increasing importance of municipal court cases"). Inadequate supervision and accountability were also perceived as a serious problem militating against the disposition of municipal court cases through plea agreements.

> Although never fully stated or explained, the reasons for the "no plea bargaining" edict in the municipal courts included the potential for abuses when there was no direct supervision over an extensive number of municipal courts.

> [*Final Report,* Exhibit F at 26.]

Indeed, the municipal court in this case noted that plea bargaining in municipal courts is particularly vulnerable to allegations of "backroom deals." *See, e.g., In re Kress,* 128 *N.J.* 520, 608 *A.*2d 328 (1992) (disciplining municipal prosecutor for remaining silent and allowing municipal judge to dismiss drunk-driving charge). Those concerns over the abuses arising from unregulated plea bargaining outweighed any potential benefits to the justice system that might be realized from the more efficient and expeditious disposition of municipal court charges through plea agreements.

When the Court determined to ban plea bargaining in municipal courts, it was especially emphatic that it should extend the prohibition to intoxicated-driving offenses. The initial Supreme Court directive to the municipal courts contained this instruction:

> [T]here should be *no* plea bargaining in the municipal courts on non-indictable offenses. This means also that the judge should not accept a plea of guilty to a lesser charge when a defendant is charged with a violation of either *N.J.S.A.* 39:4-50(a) or (b).

> [Municipal Court Bulletin Letter # 3-74, at 2].

In 1975, the Supreme Court reaffirmed its policy against plea bargaining in municipal courts. In 1983, Chief Justice Wilentz issued a reminder to Assignment Judges that "without in any way affecting the generality of [the plea bargaining] prohibition, I suggest that you emphasize the particular importance of not allowing plea bargaining in drunken driving cases." Memorandum from Robert N. Wilentz, Chief Justice, Supreme Court of New Jersey, to Assignment Judges (July 5, 1984) in *Final Report, supra*, at Exhibit C.

■ In 1988, in response to Reports from the Supreme Court Committee on Municipal Courts and the Supreme Court Task Force on the Improvement of Municipal Courts, this Court authorized a one-year experiment permitting plea agreements in municipal courts. The experiment was extended into 1989. *Final Report, supra*, at Exhibit G and H. Significantly, although the Court authorized the provisional removal of the general ban on plea bargaining, it did not relax the prohibition of plea bargaining in drunk-driving cases, *viz:*

> No plea agreements whatsoever will be allowed in drunken driving or certain drug offenses. These offenses are:
> A. Driving while under the influence of liquor or drugs (*N.J.S.A.* 39:4–50)....
> [*Final Report* at 14].

The results of this experiment were considered by the Supreme Court in 1989. The Final Report of the Supreme Court Committee to Implement Plea Agreements in Municipal Courts recommended the authorization of plea bargaining in the municipal courts:

> The existence of a regulated plea agreement process is viewed as being essential to serve both the ends of justice and the effective response to burgeoning municipal court caseloads. It will foster increases in the productivity and professionalism of the municipal court bench, administrators, clerks and staff. The process provides for the certainty and fairness of punishment to better protect the rights of the defendants, victims and the interests of society.
> [*Final Report,* at 1].

Moreover, the Committee believed the availability of plea bargaining in municipal courts was necessary to sustain the institution of the municipal courts as constituted.

> The municipal courts have a volume of cases in excess of 6 million that must be processed and resolved in an expeditious and summary manner. The Committee has been advised and is of the opinion that unless plea agreements are permitted in the carefully defined fashion being proposed, they will certainly take place in an unregulated fashion. Certainly, in the absence of some form of expeditious disposition, these courts would not be able to cope with their heavy calendars at least not given the part-time nature of the courts and the part-time nature of the judges, most of whom have full-time law practices.
>
> *[Id.* at 36].

Nevertheless, the Committee, while acknowledging the feasibility of plea bargaining in general in the municipal courts, determined that drunk-driving offenses posed special problems. It noted the extraordinary emotional and fiscal costs of drunk driving, and "the public's concern that the process of plea bargaining, as applied to alcohol and drug offenses, might undermine the deterrent thrust of New Jersey's tough laws in these areas." *Final Report* at 28. Accordingly, the Committee's report recommended that though the ban on municipal court plea bargaining should be lifted, the prohibition on plea agreements in drunk-driving offenses should continue. *Id.* at 27.

In 1990, the Court approved the institution of a regulated system of plea agreements in municipal courts. It allowed plea bargaining pursuant to *Rule* 7:4–8, in conformity with the Guidelines. The Guidelines specified that their purpose was "to allow for flexibility in the definitions and exclusions relating to the plea agreement process as that process evolves and certain offenses come to demand lesser or greater scrutiny." Pressler, *Current N.J. Court Rules,* Guideline 1 to *R.* 7:4–8 (1995). Guideline 4 adopted the recommendation of the Committee that plea bargaining not be allowed in drunk-driving cases. *Id.* at Guideline 4.

### III

We address initially the arguments of defendant that the Court's absolute ban of plea negotiations in all *N.J.S.A.* 39:4–50 offenses through its Court Rules violates the separation of powers provisions of the New Jersey Constitution and impermissibly infringes on the discretion of the prosecutor.

■ In assessing this constitutional issue, the frame of reference must encompass the special status of municipal courts. "In many respects, the municipal court is the most important in our judicial system." *In re Mattera,* 34 *N.J.* 259, 275, 168 *A.*2d 38 (1961). For many citizens, it is their only exposure to the courts and judges of this State. *Ibid.* Accordingly, the entire system is measured by their experience in the municipal court. *Ibid.* Over forty years ago, Chief Justice Vanderbilt wrote:

> "On [the municipal courts] rests the primary responsibility for the maintenance of peace in the various communities of the state, for safety on our streets and highways, and most important of all, for the development of respect for law on the part of our citizenry, on which in the last analysis all of our democratic institutions depend.
>
> [Arthur T. Vanderbilt, *The Municipal Court—The Most Important Court in New Jersey,* 10 *Rutgers L.Rev.* 647, 650 (1956)(cited in *State v. Storm,* 141 *N.J.* 245, 251, 661 *A.*2d 790 (1995).]

This Court has the prerogative and the power to limit plea bargaining in the municipal courts. The limited ban on plea bargaining must be understood as one aspect of the Supreme Court's authority to use plea bargaining in the exercise of its supervening responsibility and authority over the administration of the criminal justice system. *E.g., State v. Warren,* 115 *N.J.* 433, 558 *A.*2d 1312 (1989); *State v. Taylor,* 80 *N.J.* 353, 403 *A.*2d 889 (1979). As noted in *Taylor,*

> Plea bargaining has become firmly institutionalized in this State as a legitimate, respectable and pragmatic tool in the efficient and fair administration of criminal justice. * * * Courts across the country have adopted plea bargaining as an appropriate accommodation of the conflicting interests of society and persons accused of crime and as a needed response to an ever-burgeoning case load.
>
> [*Taylor, supra,* at 360–361, 403 *A.*2d 889.]

The plea bargaining process is born of a need for judicial efficiency and economy consistent with the interests of justice. We are ever mindful of the enormous volume of cases that impact the municipal courts. In 1961, municipal courts disposed of 1½ million cases. *In re Mattera, supra,* 34 *N.J.* at 275, 168 *A.*2d 38. They handled 3.8 million cases in 1977. *In re Yengo,* 72 *N.J.* 425, 430 n. 1, 371 *A.*2d 41 (1977). We noted in *State v. Storm, supra,*

141 *N.J.* at 251, 661 *A.*2d 790, that in 1994, 5.6 million cases were concluded in the municipal courts.

Such considerations prompted the recommendation for the removal of the ban on plea bargaining in the municipal courts. The Final Report predicted that

a regulated plea agreement process * * * will foster increases in the productivity and professionalism of the municipal court bench, administrators, clerks and staff. * * * The establishment of the process will also support case management techniques that facilitate the speedy and efficient disposition of cases.

[*Final Report* at 1–2].

■ Thus, the plea bargaining process is based on both concerns of judicial administration: the need to improve efficiency and to reduce and enhance the management of the heavy case load in municipal courts; and to assure the sound, fair and just supervision of the justice system at the municipal court level. The judicial authorization of plea bargaining subject to strict standards and the regulation of the process are well within the Court's rulemaking authority over plea-bargaining practice in the courts as contemplated by the Constitution. *N.J. Const.* (1947), *Art.* VI, § 2, *para.* 3.

■ It is clear that any regulation this Court imposes on the process of plea bargaining will condition and restrain the discretionary authority of the prosecutor. However, the fact that the actions of one branch will affect the exercise of power in another branch does not invalidate those actions as violative of the principles of separation of powers. We have determined that "the separation of powers doctrine should not be construed to prevent the Court from adopting rules which have some effect on matters which involve executive and legislative functions." *State v. Leonardis (II),* 73 *N.J.* 360, 370, 375 *A.*2d 607 (1977). *See State v. Lagares,* 127 *N.J.* 20, 601 *A.*2d 698 (1992).

■ We have previously imposed limits on prosecutorial discretion in order to foster legislative or executive goals. For instance, we have discouraged plea bargaining, dismissals and downgrading of charges that would circumvent the mandatory sentencing

scheme of the Graves Act, *N.J.S.A.* 2C:43–6. *See* Memorandum from Robert N. Wilentz, Chief Justice, Supreme Court of New Jersey, to All Judges of the State of New Jersey (April 27, 1981) in *Final Report* at Exhibit P. Similarly, we have limited prosecutorial power by imposing standards for prosecutorial decisionmaking in certain areas. *See State v. Leonardis (I)*, 71 *N.J.* 85, 121, 363 *A.*2d .321 (1976) (instituting guidelines for determining admission to pretrial intervention programs); *State v. Lagares, supra*, 127 *N.J.* at 32–33, 601 *A.*2d 698 (instituting guidelines for selection of defendants in repeat-drug-offender sentencing applications). Moreover, our courts have recognized that:

> Plea bargaining is not a right of a defendant or the prosecution. It is an accommodation which the judiciary system is free to institute or reject. Therefore, [the judiciary] can modify the plea bargaining structure at any time....
>
> [*State v. Brimage*, 271 *N.J.Super.* 369, 379, 638 *A.*2d 904 (App.Div.1994).]

■ A prosecutor has important discretionary authority in the enforcement of the criminal laws. *In re Investigation Regarding Ringwood Fact Finding Comm.*, 65 *N.J.* 512, 526, 324 *A.*2d 1 (1974) (noting that the prosecutor is a "representative of the executive branch of government in the enforcement of the criminal law") (citation omitted). The decision not to prosecute or to offer a plea bargain to a lesser included offense certainly implicates prosecutorial authority and discretion. *State v. Winne*, 12 *N.J.* 152, 171, 96 *A.*2d 63 (1953).

■ The regulation governing the practice of plea bargaining in municipal courts recognizes the fundamental role of the prosecution in the enforcement of penal laws and accommodates prosecutorial discretion. Guideline 3 specifies that prosecutorial discretion should be preserved:

> Guideline 3. Prosecutor's Responsibilities. Nothing in these Guidelines should be construed to affect in any way the prosecutor's discretion in any case to move unilaterally for an amendment to the original charge or a dismissal of the charges pending against a defendant if the prosecutor determines and represents on the record the reasons in support of the motion.
>
> [Pressler, *Current N.J. Court Rules*, Guideline 3 to *R.* 7:4–8 (1995).]

This Court's comment to the Guidelines for *Rule* 7:4–8 acknowledges the discretion accorded to a prosecutor, and emphasizes the importance of that independent decision-making authority:

> It is recognized that it is not the municipal prosecutor's function merely to seek convictions in all cases. The prosecutor is not an ordinary advocate. Rather the prosecutor has an obligation to defendants, the State and the public to see that justice is done, and truth is revealed in each individual case. The goal should be to achieve individual justice in individual cases.
>
> In discharging the diverse responsibilities of that office, a prosecutor must have some latitude to exercise the prosecutorial discretion demanded of that position.
>
> [Pressler, *Current N.J. Court Rules*, comment to Guidelines for *R. 7*:4–8 (1995).]

Nevertheless, the prosecutor's discretion may, "in appropriate circumstances, be reviewed for arbitrariness or abuse." *In re Investigation Regarding Ringwood Fact Finding Comm., supra*, 65 *N.J.* at 516, 324 *A.*2d 1. Courts have the authority to review prosecutorial acts to "curb[ ] governmental improprieties and excesses." *Id.* at 520, 324 *A.*2d 1. The Court's decision to implement regulated plea bargaining in municipal courts was motivated by the recognition that plea bargains had been conducted informally in the municipal courts, even though they were formally prohibited. Thus, the *Final Report* hoped that

> [b]y legitimating plea agreements, these devices [informal case disposition techniques] would become recognized and "legalized" and in every case placed on the record. They would thus become regulated practices and promote needed uniformity of practice and procedure.
>
> [*Final Report* at 3.]

Hence, influenced by the history of plea bargaining in municipal courts, this Court's concern over the formerly unstructured and unsupervised plea bargaining process in municipal courts led to its emphasis on the implementation of a "regularized" system and the need for limitations and exceptions to those regulations.

We note further, that this State's executive, judicial and legislative branches are unanimous in their pronouncements that deterrence of drunk driving is a paramount goal of this State. See discussion, *infra* at 456–459, 678 *A.*2d at 1090–1092. The Court understands that drunk driving represents a profound social problem that requires a flexible, pragmatic and purposeful enforcement of the policy against drunk driving. *State v. Tischio*, 107

*N.J.* 504, 512–514, 527 *A.*2d 388 (1987), *appeal dismissed,* 484 *U.S.* 1038, 108 *S.Ct.* 768, 98 *L.Ed.*2d 855 (1988). We have recognized that:

> In construing *N.J.S.A.* 39:4–50(a), we must also consider the entire gamut of statutory and regulatory law dealing with the societal dilemma of drunk-driving.... To this end, the Legislature, working in tandem with the courts, has consistently sought to streamline the implementation of these laws and to remove the obstacles impeding the efficient and successful prosecution of those who drink and drive.
>
> [*Id.* at 514, 527 *A.*2d 388.]

Subsisting under the separation of powers constraint of the Constitution is the need for cooperation among the branches of government. Governmental cooperation as a dimension of the separation of powers applies to the administration of justice at the municipal court level. *See Knight v. Margate,* 86 *N.J.* 374, 388–89, 431 *A.*2d 833 (1981). The imposition of a ban on plea bargaining in drinking and driving cases is intended to support the policy decisions of the legislative and the executive branches, in their commitment to eradicate drunk driving.

Accordingly, we conclude that the imposition of a ban on plea bargaining in cases involving violations of *N.J.S.A.* 39:4–50 does not violate the constitutional separation of powers and does not impermissibly infringe on the powers of the municipal prosecutor to dispose of cases.

## IV

The main issue in this case is whether the ban on plea bargaining in drunk-driving cases applies to the offense of permitting or allowing an intoxicated person to drive one's car. That issue arises because the language of Guideline 4 that continues the ban on plea bargaining in drunk-driving cases characterizes such cases as "driving while under the influence of liquor or drugs." Guideline 4 also refers specifically to the statute dealing with drunk-driving offenses, *N.J.S.A.* 39:4–50. That statute includes four specific offenses, two of which do not involve "driving" as such. The Guideline states:

GUIDELINE 4. Limitation: No plea agreements whatsoever will be allowed in drunken driving or certain drug offenses. Those offenses are:

A. Driving while under the influence of liquor or drugs (*N.J.S.A.* 39:4–50) and refusal to provide a breath sample (*N.J.S.A.* 39:4–50.2) and,

B. Possession of marijuana or hashish (*N.J.S.A.* 2C:35–10a(4)); being under the influence of a controlled dangerous substance or its analog (*N.J.S.A.* 2C:35–10b); and use, possession or intent to use or possess drug paraphernalia, etc. (*N.J.S.A.* 2C:36–2).

 \* \* \* \* \* \* \* \*

The offenses enumerated in *N.J.S.A.* 39:4–50 are:

- Operating a motor vehicle while under the influence of intoxicating liquor or drugs;
- Operating a motor vehicle with a blood alcohol concentration of 0.10% or more;
- Permitting another person who is under the influence of intoxicating liquor or drugs to operate a motor vehicle which one owns or has in one's custody or control;
- Permitting another person with a blood alcohol concentration of 0.10% or more to operate a motor vehicle which one owns or has in one's custody or control.

[Pressler, *Current N.J. Court Rules,* Guideline 4 to *R.* 7:4–8 (1995).]

Defendant argues that the general description in the Guideline "driving while under the influence of liquor or drugs" was meant as limiting language to define the proscription on plea bargaining, and thus to restrict the ban only to cases of defendants who are intoxicated "drivers," and not to cases of defendants who are "permitters of intoxicated drivers."

The municipal court noted that the literal interpretation of the Guideline would lead to anomalous results. The municipal court determined that the "drunken driving" and "driving under the influence" language in the Guideline could not be read as a limit on the types of drinking and driving offenses listed in *N.J.S.A.* 39:4–50 that were subject to the ban on plea bargaining. Accordingly, the court ruled that the authorization of plea agreements did not extend to the "permitting" offense.

The Superior Court affirmed the decision, observing that the "lead-in language in Guideline 4 of *Rule* 7:4–8" was "meant to be no more than [a] shorthand reference to the entire statute." The Superior Court based its conclusion on the fact that when the Guideline later referred to specific sections of the penal laws, it

did so precisely and with the proper and accurate citation to the subsection of the statute. For instance, later sections of the Guideline prohibit plea bargaining in the case of possession of 50 grams or less of marijuana, or five grams or less of hashish, citing to *N.J.S.A.* 2C:35–10a(4). Thus the trial court concluded that when this Court "meant to refer to only a portion of a statute, they knew exactly how to do it, and [how to] cite a particular statute by correct and appropriate cite."

Additionally, the court found it logically necessary to assume that the ban against plea bargaining was intended to encompass all charges involving drunken driving, whether the defendant was the intoxicated driver or the owner of the car who allowed such an intoxicated person to drive. The trial court found it "hard to believe that the Supreme Court would prohibit plea bargaining in the case where a defendant possessed a small amount of marijuana, but would allow a bargain when the owner of a vehicle knowingly allowed a drunk person to drive their automobile."

The prefatory description of the offenses covered by the Guideline was not intended to be a definitive substantive description of each of the offenses subject to the plea bargain prohibition. Like the title of a statute, this general description is designed to identify the source of the substantive provisions that constitute the specific subject matter of the regulation. The title or general description of a statute need not replicate each subject included within the statute. *See Howard Savings Inst. v. Kielb,* 38 *N.J.* 186, 200, 183 *A.*2d 401 (1962) (holding that "[t]he title of an act is not an index, [but is] merely a label"); *State v. Greene,* 33 *N.J.Super.* 497, 500, 111 *A.*2d 65 (App.Div.1955) (stating that a title to a statute "like the inscription on a tombstone, serves only to indicate what lies below"); *N.J.S.A.* 1:1–7. The same understanding of the principles of statutory construction apply to the interpretation of court regulations.

The meaning of the scope of the ban on plea bargaining in drunk-driving cases is indicated by the considerations of public policy that motivated its promulgation. That policy has been

expressed in this Court's firmly-established commitment to eradicate drunk driving. In *State v. Tischio, supra,* 107 *N.J.* at 512, 527 *A.*2d 388, we noted that:

the primary purpose behind New Jersey's drunk-driving statutes is to curb the senseless havoc and destruction caused by intoxicated drivers ... [and] to eliminate intoxicated drivers from the roadways of this state.

[*Id.* at 512, 514, 527 *A.*2d 388.]

The Court stated in *State v. Hamm,* 121 *N.J.* 109, 115–16, 577 *A.*2d 1259 (1990), *cert. denied,* 499 *U.S.* 947, 111 *S.Ct.* 1413, 113 *L.Ed.*2d 466 (1991):

Our judicial doctrines have reinforced these legislative changes at each step in the DWI-litigation process: the validation of the breathalyzer as the critical scientific test of blood alcohol (BAT) in establishing the offense, *Romano v. Kimmelman,* 96 *N.J.* 66, 474 *A.*2d 1 (1984); the rejection of individualized evidence that would undermine the BAT in trying such cases, *State v. Tischio,* 107 *N.J.* 504, 527 *A.*2d 388 (1987), *appeal dismissed,* 484 *U.S.* 1038, 108 *S.Ct.* 768, 98 *L.Ed.*2d 855 (1988), and *State v. Downie,* 117 *N.J.* 450, 569 *A.*2d 242 (1990); and the elimination of a mental-state requirement for the offense, *State v. Hammond,* 118 *N.J.* 306, 571 *A.*2d 942 (1990). In each of those cases we have recognized the social significance of DWI.

In *State v. Downie,* 117 *N.J.* 450, 464–469, 569 *A.*2d 242, *cert. denied* 498 *U.S.* 819, 111 *S.Ct.* 63, 112 *L.Ed.*2d 38 (1990), the Court reiterated its position that the clear legislative and public policy mandated a strict interpretation and rigorous application of the drunk-driving laws. More recently, the Court has asserted: "We firmly endorse the governmental commitment to the eradication of drunk driving as one of the judiciary's own highest priorities." *In re Collester,* 126 *N.J.* 468, 473, 599 *A.*2d 1275 (1992).

The *Final Report* underscored the importance of maintaining the State's present anti-drunk driving policy, as evidenced in the proscription against plea bargaining in drunk-driving cases. The *Final Report* explained:

In making this recommendation, the Committee is mindful of the nature and scope of the State's drug and drunk driving reduction initiatives, supported by the Legislature through the codification of *N.J.S.A.* 39:4–50, *N.J.S.A.* 39:4–50.2, *N.J.S.A.* 2C:35–1 *et seq.* and *N.J.S.A.* 2C:36–1 *et seq.* Those enactments are designed to hold substance abusers, including alcohol and drug users, accountable for their illegal conduct....

> The Committee also appreciates the public's concern that the process of plea bargaining, as applied to alcohol and drug offenses, might undermine the deterrent thrust of New Jersey's though laws in these areas.
>
> [T]here was a strong sense among members of the Committee that the deterrent value of the State's drunk driving laws could be ... affected if the current exclusion of drunk driving cases were to be eliminated. Thus, the clear consensus of the Committee was that the present exclusion should continue, subject only to the unilateral actions of the municipal prosecutor with regard to dismissals and amendments....
>
> [*Final Report* at 28–30.]

The Court's intention in upholding this ban can therefore be seen as an effectuation of the strong legislative and public policy to eliminate drunk driving, by refusing to allow drunk drivers to escape responsibility for their actions, by ensuring accountability of those who cause drunk driving, and by penalizing drinking-and-driving offenses to the fullest extent of the law. The ban is an essential element of a strongly-endorsed and well-articulated policy to eliminate drunk driving by affording offenders "zero tolerance" in the prosecution of their offenses.

■ This Court has a commitment to eliminating intoxicated drivers from our highways and has supported that commitment with a ban on plea bargaining in drunk-driving cases. The aims of this broad policy can be accomplished only through consistent, uniform, and vigorous enforcement of the ban. To carve out from that ban an exception in cases of "permitting an intoxicated person to drive" undermines the important policy behind the prohibition. The person who allows an intoxicated person to drive may be as, or even more, culpable than the driver. *See, e.g., Lee v. Kiku Restaurant,* 127 *N.J.* 170, 603 *A.*2d 503 (1992) (holding that tavern will be held liable for serving alcohol to visibly intoxicated patron who then foreseeably becomes involved in a motor vehicle accident); *Kelly v. Gwinnell,* 96 *N.J.* 538, 476 *A.*2d 1219 (1984) (holding a social host liable for serving a visibly intoxicated guest who foreseeably becomes involved in motor vehicle accident); *N.J.S.A.* 2A:15–5.6 (codifying law imposing liability on social host).

Moreover, the Legislature clearly viewed a person who allows an intoxicated person to drive as one who contributes to the awful

consequences of drunk driving and, therefore, shares the responsibility for those consequences. That person is as blameworthy as the drunk driver—her conduct is included in the drunk-driving statute, *N.J.S.A.* 39:4–50; it is an offense of equal magnitude to drunk driving; and it is subject to the same punishment that is applicable to an intoxicated driver. The act of unleashing a drunk driver onto the highways creates the very risk to the safety of other drivers and the public that is posed by the intoxicated driver. *E.g. Kelly v. Gwinnell, supra*, 96 *N.J.* at 544, 548, 476 *A.*2d 1219. The Legislature has seen fit to define the offense as one of the same gravity as drunk driving itself and to prescribe identical punishments for both offenses. Those considerations impelled this Court to treat these two types of offenders consistently, subjecting them to identical restrictions in plea bargaining.

The policies behind our prohibition on plea agreements are as readily applicable to those who allow an intoxicated person to drive as they are to the driver. Both are responsible for the "senseless havoc" of drunk driving. In the eyes of the law there is no distinction in culpability or punishment between drunk drivers and those who allow the drunk to drive. The Guideline that prohibits plea bargaining in all drunk-driving cases recognizes no distinction between the two offenders.

## V

We affirm the judgment below.

*For affirmance*—Justices HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—5.

*Opposed*—None.