693 A.2d 505

IN THE MATTER OF REGISTRANT E.I.: SEX
OFFENDER CLASSIFICATION.[1]

Superior Court of New Jersey
Appellate Division

Argued March 19, 1997—Decided May 7, 1997.

---

[1] The initials used in the caption are fictitious. This court has for the purposes of confidentiality, refrained from identifying the names of those involved as well as the attorneys, Municipality and County in question.

Judges SHEBELL, LONG and HUMPHREYS.

The opinion of the court was delivered by

HUMPHREYS, J.A.D.

The registrant in this Megan's Law case, *see N.J.S.A.* 2C:7–1 to –5, objects to his placement in a Tier Two category. Registrants are placed in this category if the risk of re-offense is found to be "moderate." *See N.J.S.A.* 2C:7–8(c)(3). The order provides that certain schools will be notified. The registrant moves for an order staying notification pending his appeal. This opinion will resolve the merits of the appeal. The registrant's crime occurred after Megan's Law was enacted. Consequently, the federal injunction with respect to notification in pre-Megan's Law cases is not applicable.

The registrant contends that the judge in finding a moderate risk of re-offense placed excessive reliance upon the Registrant Risk Assessment Scale ("RRAS" or "Scale"). *See In re C.A.,* 146 *N.J.* 71, 100–10, 679 *A.2d* 1153 (1996). The registrant argues that the judge "did not give adequate weight to the fact that his offense involved a consensual act with a 15 year old girl when the registrant was 21 years old and this consensual act is his only sex related offense." The registrant also contends that the Scale fails to include the registrant's psychological profile which the registrant maintains is a necessary consideration in the prosecutor's *prima facie* case.

We have thoroughly reviewed the record and considered the arguments presented. We conclude that this case falls outside the "heartland" of cases requiring community notification. *See In re G.B.,* 147 *N.J.* 62, 82, 84–85, 685 *A.2d* 1252 (1996). The registrant should be placed in Tier One.

## I

A female, aged fifteen years, related to the police that in September 1995, while walking along a street, she was abducted by a male. He showed her a knife, took her to his house and forcibly had sexual relations with her. The next day, she left the house while he was sleeping.

The police went to the registrant's house and arrested him. A small caliber semi-automatic handgun was found on top of the night stand in his room.

The registrant, aged twenty-one, gave a statement to the police in which he said that while he was "hanging out" with his friends on a street corner, he saw a girl, called her over and introduced himself and his friend. She told him that she had run away because she was having problems with her mother and was on her way to see her father in New York. The girl agreed to stay overnight in the registrant's bedroom. She told him she was sixteen or seventeen years old. Later that evening, they had consensual sexual relations. The next morning he went to work. When he returned home, the girl was still in his bedroom. His mother wanted the girl to leave. The registrant and the girl again had consensual sexual relations. The girl then left the house.

The prosecutor presented the matter to the grand jury. The prosecutor read to the grand jury the statements of the victim and the registrant. He advised the grand jury regarding the offenses of aggravated sexual assault, sexual assault, aggravated criminal sexual contact, endangering the welfare of a child, possessing a handgun without a permit to purchase, and receiving stolen property, namely, the handgun. The victim did not appear. She and her family had apparently moved out of New Jersey.

The grand jury indicted the registrant for: (1) sexual assault, (2) criminal sexual assault, (3) endangering the welfare of a child, (4) receiving stolen property, and (5) possession of a firearm without a permit to purchase.

Pursuant to a plea agreement, the registrant pled guilty in February 1996 to endangering the welfare of a child, contrary to *N.J.S.A.* 2C:24–4(a), a third-degree offense, and possession of a handgun without a permit, contrary to *N.J.S.A.* 2C:39–5(b), a fourth degree offense. The State agreed that the remaining counts would be dismissed and the maximum sentence would be up to 364 days in the County jail as a condition of probation.

The factual basis given by the registrant at his plea was that he had met a girl who had run away from home. He brought her to his home and had consensual sexual relations with her during the evening. The registrant said that he was willing to accept that she was under sixteen years old.

The registrant was sentenced on March 15, 1996 to probation for four years and to the custodial time already served which was 151 days. The judge added two conditions to probation: (1) that the registrant obtain his high-school equivalency diploma (G.E.D.); and (2) that the registrant find full-time employment. The remaining counts were dismissed pursuant to the plea agreement and the registrant was released.

More than seven months later, the prosecutor served the registrant with a notice that action was being taken against him under Megan's Law. The prosecutor gave the registrant a score of 56 points on the RRAS. This score would place the registrant in the category of a moderate risk of re-offense or Tier Two. According to the scale, persons scoring between 37 and 73 points are in this category.

After a hearing, the judge reduced the registrant's score to 52 points. The judge gave the registrant the maximum score of 15 on the degree of contact, a score of 0 as to force used, a score of 5 as to the age of the victim, the maximum score of 9 as to victim selection (stranger), a score of 3 for the length of time since the last offense (more than one year but less than five), a score of 9 for a history of anti-social acts, a score of 6 for substance abuse not in remission, a score of 3 for a lack of therapeutic support, a score of 1 for residential support and a score of 1 for employ-

ment/educational stability—for a total of 52 points. The judge found that the registrant "is clearly a moderate risk to re-offend. There is no doubt in my mind that he should be in a moderate risk category."

However, the judge also found that the registrant was not likely to re-offend with pre-school or pre-teen children. The judge said that the basis for her opinion was that "this is his first offense and there is no history of sexual offending with pre-school or pre-teen children." The judge's opinion is supported by an expert's report submitted by the registrant in which the expert recommended a limitation upon community notification. The expert concluded in the report that the registrant appeared unlikely to re-offend with pre-school or pre-teen age children.

The prosecutor at the Megan's Law hearing stated with commendable candor that "upon scrupulous review of the file ... we could not demonstrate to your Honor even a *prima facie* case based upon credible evidence in this file that there was violence used to accomplish the sexual assault." The prosecutor said that the grand jury indicted the registrant "for statutory sexual assaults or sexual assaults where consent wasn't in issue based upon the difference in age between the registrant and the victim."

The prosecutor's concession is supported by the grand jury transcript. A grand juror apparently asked whether a consensual sexual relationship would be a violation of the law. The prosecutor responded "... where the age of the victim is the critical ... circumstance it is no defense that the actor believed the victim to be above that age. And again, that's the law." The juror responded, "okay."

Consistent with the view of the prosecutor and the grand jury, the judge gave the registrant a score of 0 on "degree of force." The judge said:

> while obviously only [the registrant] and the young lady involved know the full story, given her failure to appear at the grand jury, given her leaving the house when she indicated she was kept at knife point, given her runaway status, given her moving and leaving no forwarding address which was represented to me at one

point during the conference, I simply cannot say that I can really rely upon the alleged abduction at knife point in a red car.

The registrant testified at the Megan's Law hearing that he was living with his twenty-one year old girlfriend and he was employed. The assistant prosecutor has not asserted that the registrant has re-offended since his release in March 1996.

## II

To summarize the critical facts in this case, a twenty-one year old male meets a fifteen year old female who has run away from home. They go to his house and have sexual relations. No force is used and the relations are apparently consensual. She stays the night and the next day they again have sexual relations. The reason this conduct is a crime is because she is fifteen years of age and he is over the age of eighteen. *See N.J.S.A.* 2C:24–4(a). Due solely to the girl's age, a sexual offense has occurred and Megan's Law is thereby triggered. *See N.J.S.A.* 2C:7–2.

We conclude this case is not within the "heartland" of cases which require community notification. *See In re G.B., supra,* 147 *N.J.* at 82, 84–85, 685 *A.*2d 1252. A primary purpose of the community notification provisions of Megan's Law is to enable society "to protect itself from sexual predators." *See Doe v. Poritz,* 142 *N.J.* 1, 109, 662 *A.*2d 367 (1995). The registrant does not appear to be such a predator. We do not condone or encourage the registrant's conduct for which he has served five months in jail and will serve four years on probation and pay monetary sanctions. We are also mindful that the registrant has a history of juvenile offenses. These were apparently not sexual offenses. Nevertheless, we are satisfied that on this record the registrant has not been shown to be the type of sexual offender contemplated by the community notification provisions of Megan's Law.

Further, community notification will have serious consequences to the registrant. At the registrant's sentencing, the public defender represented, and the judge expressed a belief in the

representation, that the registrant has the ability "to straighten out his life." The judge considered employment to be important to the registrant's rehabilitation and therefore made employment a condition of probation. If community notification is ordered under Megan's Law, that may adversely affect the registrant's employment prospects and thus his rehabilitation.

Furthermore, if Megan's Law is applied literally and mechanically to virtually all sexual offenders, the beneficial purpose of this law will be impeded. The prosecutor stated in the telephonic oral argument of this appeal that this prosecutor's office had a very substantial backlog of pending Megan's Law cases. The prosecutor took the position that his office had no discretion with respect to calculating a registrant's score on the RRAS. In other words, the RRAS while not conclusive on a court, *see In re C.A., supra,* 146 *N.J.* at 108, 679 *A.*2d 1153, is apparently considered by this prosecutor's office to be binding upon it.

We question the validity of the prosecutor's position. The prosecutor's office has broad discretion in charging and downgrading criminal offenses. *See State v. Hessen,* 145 *N.J.* 441, 452, 678 *A.*2d 1082 (1996). Prior to indictment, the prosecutor may administratively dismiss a complaint, even a serious one, without first obtaining the approval of the court. *See R.* 3:25–1(a).

Prosecutors use this discretionary authority to manage their heavy case load while still fulfilling their function to enforce the criminal law and protect the public. We see no reason why the prosecutor may not exercise similar discretion in Megan's Law cases. A prosecutor's office in a large county may be overwhelmed by the sheer number of Megan's Law cases. The registrant was released on probation at his sentencing in March 1996, but Megan's Law proceedings were apparently not begun until some seven months later. The prosecutor implied during oral argument that the reason for the delay was a backlog in Megan's Law cases. Delays in the processing of Megan's Law cases may frustrate the beneficial purposes of the statute, espe-

cially if the burden on the prosecutor's office results in the delay of cases involving serious sexual predators.

■ We recognize that according to the RRAS, the registrant is within the Tier Two category. However, the RRAS need not be rigidly followed in all cases. It is "not a scientific device. It is merely a useful tool to help prosecutors and courts to determine whether a registrant's risk of re-offense is low, high or moderate." *In re C.A., supra*, 146 *N.J.* 71 at 108, 679 *A.*2d 1153. The Supreme Court has held that the scale is "presumptively accurate and is to be afforded substantial weight—indeed, it will even have binding effect—unless or until a registrant 'presents objective criteria that would support a court not relying on the tier classification recommended by the Scale.'" *In re G.B., supra*, 147 *N.J.* at 81, 685 *A.*2d 1252 (quoting *In re C.A., supra*, 146 *N.J.* at 109, 679 *A.*2d 1153). Nevertheless, "the ultimate determination of a registrant's risk of re-offense and the scope of notification is reserved to the sound discretion of the trial court." *In re G.B., supra*, 147 *N.J.* at 79, 685 *A.*2d 1252. A classification "is subject to judicial review by either side through appeal and any finding will have to be supported on the record." *Id.* at 81, 685 *A.*2d 1252.

■ Further, the courts are not " 'to blindly follow the numerical calculation provided by the Scale, but rather to enter the appropriate tier classification' based on all of the evidence available to them." *Id.* at 78, 685 *A.*2d 1252 (quoting *In re C.A., supra*, 146 *N.J.* at 109, 679 *A.*2d 1153). We conclude that under the facts in this case, the RRAS is not an accurate gauge of the risk that this registrant will commit another sexual offense.

The RRAS is not especially helpful in this case for another reason. The Supreme Court in *Doe v. Poritz, supra*, directed the Attorney General to prepare psychological or psychiatric profiles to be considered in support of low risk assessments as well as high risk assessments. 142 *N.J.* at 24 n. 5, 662 *A.*2d 367. In the case of *In re C.A., supra*, the Supreme Court "suggested" that the "Attorney General be prepared to show that the State has proper-

ly responded to the Court's directive...." 146 *N.J.* at 106, 679 *A.*2d 1153.

The public defender contends and the State does not dispute that the Attorney General has still not complied with the Supreme Court's directive. Thus, the Scale as to this registrant may be unreliable because it does not include psychological and psychiatric factors. As stated by the Supreme Court in *In re G.B.*, "[g]iven the Scale's failure to consider positive psychiatric profiles and positive post-sentence behavior as true mitigating factors that can reduce the projected risk of re-offense, expert testimony may be essential for an accurate tier classification, even to the point of overriding the Scale score." *In re G.B., supra,* 147 *N.J.* at 83, 685 *A.*2d 1252.

No such expert testimony is present in this record. The State has not argued that the registrant has re-offended nor has the State argued that the registrant would have a negative psychological profile insofar as sexual offenses are concerned. The sentencing judge was apparently so unconcerned about the possibility of a sexual re-offense that he did not impose—nor did the prosecutor request—any requirement of psychological counseling or therapy.

The foregoing compels the conclusion that in this case the Scale's numerical calculations do not "properly encapsulate" the registrant's specific case, and that this case is "sufficiently unusual" to be considered outside the "heartland" of Megan's Law cases. *Id.* at 82, 85, 685 *A.*2d 1252. Consequently, the registrant "deserves to be placed in a tier other than that called for by the prosecutor's Scale score." *Id.* at 85, 685 *A.*2d 1252.

We do not criticize the Law Division judge's evaluation of the case. Nor are we critical of the prosecutor's office. The hearing was conducted carefully and properly. However, the purposes of Megan's Law will not be served by requiring community notification in this case. We reverse and direct that an order be entered placing the registrant in a Tier One classification.