## First National Bank of Pittsburgh *v.* Baird, Appellant.

Argued March 19, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Sidney J. Watts,* with him *Allen G. Lynch,* for appellants.

*Ralph D. McKee,* with him *George E. Alter,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, April 14, 1930:

Plaintiff sued defendant as the maker of a promissory note. On August 16, 1929, the statement of claim, with notice to file an affidavit of defense within fifteen days, was served on defendant; on September 24, 1929, the court extended the time to October 10, 1929. On October 25, 1929, defendant filed a petition averring that he was only the accommodation maker of the note, and, as provided by the Act of April 10, 1929, P. L. 479, caused a scire facias to be issued against the executors of the will of one Reed, who he alleged was primarily liable for the debt. No affidavit of defense having been filed, plaintiff, on October 29, 1929, requested the prothonotary to enter judgment against defendant for want thereof. This was mistakenly refused because of the pendency of the scire facias. On November 1, 1929, plaintiff applied for and the court granted a rule to show cause why the judgment should not be entered. On November 20, 1929, the executors of Reed obtained a rule to show cause why the writ of scire facias should not be quashed. On December 16, 1929, the rule for judgment for want of an affidavit of defense was made absolute. From that judgment the present appeal was taken. It is expressly admitted by appellant that, as between him and plaintiff, he owes the amount of the note; but he claims that, because of the pendency of his scire facias and the motion to quash it, the court be-

low erred in entering the judgment. Our opinion in Vinnacombe v. Phila., 297 Pa. 564, which we now re-affirm, expressly rules against appellant upon that and every other point made or suggested by him.

In that case, we said (page 569) : "Nothing in the act shows the slightest intention to affect plaintiffs in such suits. Consequently, the adding of additional defend-ants will give no higher right to plaintiffs than they had before. As to them the action proceeds against the orig-inal defendant only, exactly as it would have done if the additional defendants had not been named, except that the court below, in the exercise of a sound discre-tion, should give to the original defendant, who acts promptly, a reasonable time to bring the additional de-fendants upon the record, before being required to file an affidavit of defense or plea." In the instant case, ap-pellant asked for such additional time and was granted an extension for sixteen days. He did not request a fur-ther extension; and, so far as the record discloses, it could not properly have been given to him if he had. We have here, therefore, a case in which appellant admit-tedly has no defense as against plaintiff, has had the 15 days specified in the rule to file an affidavit of defense, 16 more days allowed by the court for the purpose, and, before judgment was entered against him, had 91 addi-tional days to file the affidavit, 43 thereof by the grace of plaintiff's counsel and 48 because of the mistake of the prothonotary. Despite this, he now contends that the judgment was prematurely entered, because, as he alleges, any other conclusion might result in difficulties to other litigants in other cases, under suggested possi-bilities which do not exist here. This attempt to force a conclusion by way of an inapplicable argument ab in-convenienti, not from the language of the statute but in direct contravention of it, must necessarily fail. That kind of argument is only available where there are two reasonably possible constructions of the language ac-tually used; in which event it may be concluded that

the legislature intended to do that which would be helpful, rather than that which might be harmful. Under any and every circumstance, however, the statute must be so construed as to effectuate the legislative purpose, and not to accomplish something not intended.

We might well close our opinion at this point; but, in order to avoid similar erroneous arguments being made in the future, we will take up appellant's contentions seriatim. He particularly objects to the statement, in the opinion of the court below, that the contest between him and the defendants brought in by the scire facias "did not abate by the entry of plaintiff's judgment." Whether it did or did not is wholly unimportant on this appeal, which has to do only with plaintiff's right to have judgment; this question can become relevant only when the issues between appellant and the Reed executors are up for decision. If that contest was held to abate, it would be because of appellant's dilatory conduct in the matter, in which event his issues with the Reed executors would have to be decided in a new suit, which could be instituted after this one is ended, just as he would have been compelled to do before the statute was passed. If it did not abate, as we are clear it did not, it will be decided in the present action, and no difficulty will arise because it is to be settled in a suit docketed as of the same term and number as this one, rather than in another of a different term and number. That is the modern practice in many if not most judicial districts, on issues raised in attachments sur judgments, sheriff's interpleaders and the like.

This consideration also answers appellant's statement that, unless his contention is sustained, "the scire facias proceedings are entirely useless and ineffective, and, as far as defendant is concerned, the act might just as well have never been passed. The only recourse open to him is just the same as it was before the act was passed." If this is so, it is partly because of his dilatory tactics, and partly because the statute discloses no in-

tention to affect a plaintiff's right to an early judgment for want of an affidavit of defense. If the failure to act promptly results in not getting the additional defendants into court in time, or, being in, they disclose no defense so far as concerns plaintiff, the latter may get a judgment against the primary debtor exactly as he would have done had the statute not been passed; and, in that event, the only change is that the issue between the two classes of defendants will be determined in the old suit instead of in a new one.

Appellant next says that "If the act means anything, it means that respondents in the scire facias will eventually, assuming that the writ has been properly issued, be made parties defendant in the action. By becoming parties defendant, the plaintiff is necessarily required to move against them, as well as against the original defendant." This dogmatic assertion is not only directly antagonistic to what we said in Vinnacombe v. Phila., supra, but it is equally so as to the language of the statute. To compel plaintiff "to move against" every one brought in by the scire facias, would often require him to proceed against one regarding whom he never had a claim. For instance, defendant is entitled to bring in an indemnitor, with whom plaintiff was not connected in any way. Appellant's whole contention on this point is built on the word "defendants" in the clause "additional defendants." The legislature might just as well have used the words "third parties," in which event this supposed argument could not have been made. What was intended is clear beyond cavil, and the use of the word "defendants" does not make it less so.

What has been said answers also appellant's belief "that the proper effect of the act is to compel [plaintiff] to submit to the introduction of both its debtors as co-defendants in one suit, and to oblige it to proceed concurrently against both to judgment," for, as pointed out, in many cases arising under the statute, plaintiff would have no claim against the additional defendant, and the

statute does not attempt to create such a liability, even if this could legally be done, which certainly it could not be. The act was not passed to hinder or delay a plaintiff, or to compel him to do impossible or useless things, but only to give defendant an immediate remedy as against "any other person alleged to be liable over for the cause of action declared on, or jointly or severally liable therefor with him." Before it was passed, a defendant could only notify the third party, wholly or partially liable to him, to appear and defend, but could not proceed against that third party until the principal suit was decided. This delay might be disastrous; might result, when the new suit came to be tried, in inability to prove the notice to appear and defend, or might find the primary debtor beyond the reach of process, or dead or bankrupt. This being the intent of the statute, it must be construed to accomplish that purpose and not some other, argued for by antagonistic counsel, but not expressed or even hinted at in the act itself.

There is no basis whatever for appellant's statement that "The requirement laid down by the court's decision in the Vinnacombe Case that the writ of scire facias have attached to it a copy of plaintiff's statement of claim, manifestly proceeds upon the theory that the respondents in the scire facias will have to answer that statement of claim, or, in default thereof, have judgment entered against them." Had appellant read that opinion with a desire to understand it, and not merely to buttress his inapplicable argument, he would readily have ascertained that the purpose was to enable the additional defendants to know the nature of the claim for which the original defendant alleged the additional defendants were liable, in whole or in part.

We fully agree with appellant that "due and orderly procedure will not permit, first, the entry of a judgment against the original defendant, then litigation between the parties to the note with respect to primary liability,

and finally a judgment in favor of plaintiff against the executors." Not having sued the executors, plaintiff can recover no verdict or judgment against them; there being no issue between it and them, there can be no trial on the theory that there is an issue to be tried; the only one who can possibly recover against the additional defendants is the original defendant who has brought them into court and raised an issue with them.

Appellant's contention that our statement in the Vinnacombe Case (297 Pa. 569) "that as to the plaintiff in the suit, 'the action proceeds against the original defendant only, exactly as it would have done if the additional defendants had not been named' is......in fact inconsistent with the language appearing on page 574, to the effect that if the judgments be 'adverse to both the original and the additional defendants,' plaintiff, upon receiving satisfaction from the original defendant, should mark the suit to the use of the latter," is not even ingenuous. A slight reading would have shown that two judgments were referred to, the one determining the issue between plaintiff and the original defendant, and the other deciding the issue between the latter and the additional defendants, both entered in the one trial; for the immediate context shows that a new trial or judgment non obstante veredicto may be granted as to one and refused as to the other, and execution shall go not by plaintiff against the additional defendants, but only by the original defendant "for the proportion of the recovery [of plaintiff] adjudged to be payable by them."

Appellant's final suggestion that "If the present judgment stands, it is quite possible for the provisions of the act to be completely nullified by the purchase from the plaintiff by the Reed executors of the judgment, and the prosecution of the same by the executors against the defendant," indicates a temporary forgetfulness of the principles of Pennsylvania jurisprudence. If the executors of the third party are adjudged to be primarily liable to plaintiff for the claim in suit, purchase plain-

tiff's judgment against the original defendant, and attempt, openly or under cover, to proceed thereon against the latter, he may prevent the issuing of execution on the judgment, either by a bill in equity or by a rule to stay execution perpetually, which latter proceeding will be decided according to equitable principles. By payment to plaintiff the executors would only pay the obligation of their decedent, and would thereby extinguish the claim, if he was, in fact, the primary debtor.

We have dealt with plaintiff's contentions at such length because we recognize the fact that a change in legal procedure always meets with opposition and creates some confusion, and that all sorts of difficulties, both relevant and irrelevant, will be suggested, until, by repeated decisions, they are cleared away and the effect of the new legislation is finally determined. In passing upon them, the courts must accept the legislation as it is written, and apply what it says despite the suggested difficulties, which, after all, are generally found to be more imaginary than real. The conservative bar frequently prefers to perpetuate the prior procedure, though it destroys the statute; the courts, however, must give full effect to the statute, and must alter that procedure to fit the new situation, created by the statute, when they cannot coexist. Any other course by the courts would be a usurpation of legislative power. Much more confusion and contention arose out of the Procedure Act of May 25, 1887, P. L. 271, which substituted the modern statement of claim for the old fashioned narr, and quite as much under the later Practice Acts, under the Joint Suit Act of June 29, 1923, P. L. 981, under the statute allowing other claimants to become parties to suits on official bonds, and under those providing for the consolidation of suits growing out of the same accident or procedure. Yet most of these objections and imaginary difficulties have disappeared, others are being straightened out as they arise, and the proper practice under those statutes has largely become part of

the accustomed procedure and is accepted as a matter of course, as that under the Act of 1929 will, also, when its seeming difficulties have been ironed out as they arise. Under the Joint Suit Act, above referred to, some questions, supposed to be still unsettled, were argued the same week as the present appeal (Gable v. Yellow Cab Co., 300 Pa. 37, and Hughes v. Pittsburgh Transportation Co. et al., 300 Pa. 55), yet few would suggest the statute should be repealed, and no one now presents difficulties which are inapplicable.

A like "consummation devoutly to be wished" regarding the Act of 1929, will be the sooner attained, if courts and counsel alike will seek, as the court below did in the present case, to apply the legislative remedy, and do not attempt to construe the statute in such a way as to give to it a meaning not intended. Defendants are not compelled to proceed under it. If they fear complications by so doing, they may still stick to the old ways; but if they do invoke its provisions they must act promptly. This we stressed in the Vinnacombe Case and now repeat.

In all civil litigation, the trial courts, at least to the extent that they are not inhibited by statute, have the power to control the procedure so as to attain "justice without sale, denial or delay." It may be said, generally speaking, that, in the absence of applicable legislation, this control is only limited by the constitutional requirements of the right of trial by jury, and the litigant's right to a full and fair hearing before judgment is entered against him. Under prior procedure, a trial judge could take all the evidence on the question of defendant's liability in a negligence case, without receiving that which related to the damages, and enter a nonsuit if, upon the evidence produced, a verdict against defendant would not be sustained; though, under Panek v. Scranton Ry. Co., 258 Pa. 589, and Thompson v. Emerald Oil Co., 279 Pa. 321, 326, a verdict could not thus be reached. The Act of 1929, however, gives additional

power to the courts in proceedings affected by it. Under it, any issue the determination of which will speed the disposition of the whole or any definite part of the controversy, and which can be justly and fairly tried first, without injuriously affecting the other parties to the action, may be thus heard and disposed of before hearing evidence on the other issues. The only limitation on the trial judge's power in this respect, is that whatever course is taken must be "according to equitable principles," that is, it must be just and fair from the standpoint of equity and good conscience. What we have said is not intended to express the extent of the controlling power of the court in such cases, but simply to point out one of the ways by which, under friendly interpretation, the statute may be made a beneficent means of reaching justice speedily, and at a minimum of cost to litigants and to the State.

The judgment of the court below is affirmed.