557 A.2d 1171

Lois Arcurio and Melody Glogowski, t/d/b/a Family House Personal Care Boarding Home, Petitioners *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued February 9, 1989, before Judges DOYLE and COLINS, and Senior Judge KALISH, sitting as a panel of three.

*Charles F. Perego, McMonigle, Vesely, Mauro and Perego, P.C.*, for petitioners.

*Jeffrey P. Schmoyer,* Assistant Counsel, for respondent.

OPINION BY JUDGE COLINS, May 3, 1989:

Family House Personal Care Boarding Home (Family House) appeals a final determination of the Director of Hearings and Appeals of the Department of Public Welfare (Department) denying Family House's personal care boarding home (PCH) license based upon violations of Section 1026(b)(1)[1] and (2)[2] of the Public Welfare Code (Code).

Family House is owned and operated by Lois Arcurio and Melody Glogowski, and is located at 25 Sycamore Street, Natrona, Pennsylvania. Between October 3, 1986, and April 3, 1987, Family House operated pursuant to a fourth and final provisional license issued by the Department.[3] Family House was notified by letter dated February 23, 1987, that an inspector with the PCH Division of the Department would conduct an on-site inspection of the facility on March 4, 1987.

During the course of the inspection, the PCH inspector (Barbara Donnelly) was given a PCH pre-license survey information form which had been prepared the morning of March 4, 1987, by Arcurio with Glogowski's

[1] Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §1026(b)(1).
[2] 62 P.S. §1026(b)(2).
[3] Section 1008 of the Code, 62 P.S. §1008, allows the Department to issue as many as three provisional licenses to an applicant which is in substantial, but not complete compliance, with the provisions and regulations of the Code.

assistance. This form indicated that there were eleven residents currently at Family House, three of whom were male. The form also contained an alphabetized list of the current residents. This list did not, however, include Lawrence S. who had been admitted to Family House on February 27, 1987, and was a resident of the home on March 4, 1987.

Although Inspector Donnelly was given a stack of resident records to review during her inspection, no records relating to Lawrence S. were contained therein, nor was she shown any papers relating to Lawrence S. at any point during the inspection. In fact, at no time during the inspection did anyone from Family House advise Inspector Donnelly that Lawrence S. was a resident of the home. Lawrence S. was not present at Family House on March 4, 1987, because he was picked up early that morning by his daughter and returned at approximately 7:00 p.m. or 8:00 p.m., that evening.

Following an anonymous complaint, the Department conducted an unannounced inspection of Family House on March 20, 1987. During the course of this inspection, Inspector Donnelly discovered the presence of Lawrence S. and became aware that he had been a resident of Family House since February 27, 1987. Inspector Donnelly met Lawrence S. during the reinspection and asked him to show her the door. Inspector Donnelly considered his response inappropriate for the question and, thus, formed the opinion that Lawrence S. was not independently mobile and, therefore, not a proper resident of a PCH.

Prior to Lawrence S.'s admission to Family House, he was diagnosed as an Alzheimer's patient and experienced periods of time when he became somewhat disoriented. Upon his admittance, Family House received a discharge instruction form from Torrence State Hospital dated February 26, 1987, which indicated that Lawrence S., if

agitated, would hold himself rigid and during those periods would require the assistance of one to two staff members to ambulate. In addition, a physician's certificate was received which indicated that Lawrence S. could be properly cared for in a PCH.

By letter dated July 15, 1987, the Department notified the operators of Family House that it was refusing to issue them a new licence and that Family House must terminate operation as a PCH. These actions were based on the Department's determinations that Family House had admitted and retained a person (Lawrence S.) who was neither independently mobile nor semi-mobile, had placed this resident on the second floor, and concealed the residency of this person from the Department inspector at the time of the inspection. The operators of Family House, by letter dated August 14, 1987, appealed the Department's action. A hearing on this appeal was held on December 15, 1987, and the examiner recommended that Family House's appeal be denied. The Director of Hearings and Appeals of the Department issued an order on June 9, 1988, adopting the examiner's adjudication and recommendation. Family House filed a timely petition for review with this Court on July 9, 1988.

The scope of review of this Court from a determination of the Department is to determine whether constitutional rights were violated, an error of law was committed, or findings of fact were unsupported by substantial evidence. *Northwood Nursing and Convalescent Home v. Department of Public Welfare*, 110 Pa. Commonwealth Ct. 40, 531 A.2d 873 (1987).

The issue presented to this Court by Family House's appeal is whether there is substantial evidence to support the Department's decision to deny Family House's license.

The hearing examiner recommended that the Department sustain Family House's license refusal on three

grounds: (1) that Lawrence S. was not independently mobile and, therefore, not a proper resident of the home, 55 Pa. Code §2620.21(d); (2) that Lawrence S. was not independently mobile and, therefore, not a proper resident of a second floor room, 55 Pa. Code §2620.38(f); and (3) that Family House intentionally withheld information of Lawrence S.'s presence, since such a discovery might have resulted in a finding of noncompliance with PCH regulations and, consequently, the loss of Family House's license, Section 1016 of the Code, 62 P.S. §1016. Since each of the foregoing grounds for refusal focuses on the mobility of Lawrence S., we must first determine whether substantial evidence supports the conclusion that Lawrence S. was not independently mobile.

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Murphy v. Department of Public Welfare*, 85 Pa. Commonwealth Ct. 23, 480 A.2d 382 (1984).

The hearing examiner chose not to believe the testimony of Lawrence S.'s daughter, Mary Ellen Gray, a registered nurse, who testified that at the time of Lawrence S.'s admittance into Family House, he was independently mobile. Of course, it was within the hearing examiner's discretion to find Mrs. Gray's testimony not credible, since credibility and the weight to be given the evidence are determinations solely within the discretion of the fact finder. *Colonial Gardens Nursing Home v. Department of Health*, 34 Pa. Commonwealth Ct. 131, 382 A.2d 1273 (1978). However, the only evidence presented which would establish Lawrence S.'s immobility was the statement contained on the discharge form (*i.e.*, holds self rigid if agitated), and the following testimony of Inspector Donnelly:[4]

---

[4] Family House argues that the hearing officer erred in admitting this testimony of the PCH inspector regarding Lawrence S.'s mobility. It argues that the inspector's testimony was without foun-

Q: Did you speak at all with Mr. Larry S. on March 20th?

A: Yes, I did.

Q: Did you ask him any question?

A: Yes, I did.

Q: Do you recall what you asked him?

A: Yes, I believe I asked him to show me where the door was.

Q: And do you recall his response to that?

A: It was just inappropriate. I don't even remember what he said.

The foregoing testimony constitutes nothing more than the inspector's recollection of her discussion with Lawrence S. Moreover, this testimony is conclusory and fails to provide substantial evidence upon which to base a decision that Lawrence S. was not mobile.

When Lawrence S. was discharged from Torrence State Hospital to Family House, he was issued two documents. These documents were also introduced to the hearing examiner. The first document was a discharge

---

dation for her opinion, as she could not remember Lawrence S.'s response to her question. Accordingly, Family House contends it was an error of law for the hearing examiner to admit it.

Commonwealth agencies are not, however, bound by the technical rules of evidence. Administrative Agency Law, 2 Pa. C. S. §505. Moreover, the Pennsylvania Supreme Court has stated:

Where a witness has observed an occurrence and formed an impression thereof, the fact that, at the trial, due to the passage of time and the fading of memory, she is not able to state with positive or absolute certainty *exactly* what she observed, but only what 'I think' or 'I vaguely remember' occurred, will not preclude the introduction of the witness' testimony. (Emphasis in original.)

*Commonwealth v. Stickle*, 484 Pa. 89, 108, 398 A.2d 957, 967 (1979).

We find, therefore, that introduction of this testimony was not an error. The fact that Inspector Donnelly could not clearly remember her encounter with Lawrence S. went to the weight to be given her testimony, not its admissibility.

form which was signed by a physician and indicated approval of Lawrence S.'s discharge from the hospital. This document contained a note which stated: "Unsteady gait, if agitated holds self rigid and need assist (sic) of one to two staff to ambulate." The second document was a physician's certificate, specifically required by the Department's PCH regulation, 55 Pa. Code §2620.21(a) in which a physician determined that Lawrence S. did not require the services of an intermediate care facility nor a skilled nursing facility and could be adequately served in a PCH.

Family House argues that because a physician's certificate is required to be maintained by a PCH operator for each resident, and must be updated annually pursuant to 55 Pa. Code §2620.21(a) and (b), the purpose of the certificate is to insure that only qualified residents are admitted to licensed PCH's. Thus, it is argued that the discharge certificate issued from Torrence State Hospital for Lawrence S. represented an unqualified and definitive statement by the Department that Lawrence S. was a proper resident of Family House.

The Department, on the other hand, asserts that the physician's certificate represented only that Lawrence S.'s needs could be adequately served by a PCH, not that he was a proper resident of a PCH. Moreover, the Department argues that the statement contained in the discharge form relating to Lawrence S. holding himself rigid if agitated rendered Lawrence S. immobile and, therefore, he was not a proper resident of Family House. Finally, the Department asserts that Family House had a duty to inquire of the information contained in the discharge form before Lawrence S. was admitted into the home.

As previously noted, 55 Pa. Code §2620.21(a) requires that a physician's certificate be maintained by PCH operators for each resident. Here, a physician from

Torrence Hospital made the determination that Lawrence S. could be adequately cared for in a PCH. Since the operators of Family House are not licensed health care professionals, there is no reason why they would question the representation made in the physician's certificate, nor is there any reason why they would not in good faith rely upon that representation.[5] In addition, if Lawrence S. did not exhibit signs of holding himself rigid and needing assistance to ambulate while in the care of Family House, the operators had no reason to believe he was not a proper resident. Likewise, if Lawrence S. never experienced such a seizure while in Family House's care, he was a proper resident of that PCH. We refuse to hold that mere speculation of what a resident "may" experience will disqualify that person as a proper resident of a PCH.

Based upon our examination of the evidence concerning Lawrence S.'s mobility, we find that substantial evidence does not support the Department's conclusion that Lawrence S. was neither independently nor semi-mobile.

---

[5] We note that the present situation is distinguishable from that which arose in *Colonial Manor Personal Care Boarding Home v. Department of Public Welfare*, 121 Pa. Commonwealth Ct. 506, 551 A.2d 347 (1988). In *Colonial Manor*, a Mr. Bock owned and operated both a PCH and a nursing home. When Bock's nursing home closed, twenty-four of the home's thirty-six patients, who had *repeatedly* been certified as needing intermediate nursing care, were suddenly certified as proper PCH residents and transferred to his PCH. This Court affirmed the Department's determination that Bock knew that these patients could not have possibly become well enough within a few weeks to live without skilled nursing care and, therefore, could not avail himself of the defense that he relied on the certificates. In the instant matter, Lawrence S. was at all times certified as a proper resident of a PCH. Our review of the record reveals nothing which would indicate that Lawrence S.'s physician's certificate was invalid or that Family House's operators should have been aware that the certificate was invalid.

We note that this conclusion effectively negates two of the Department's three grounds for refusing Family House's license. Of course, the Department *may* deny a license for even a single violation of one of its licensure regulations. *Pine Haven Residential Care Home v. Department of Public Welfare*, 99 Pa. Commonwealth Ct. 1, 512 A.2d 59 (1986) (emphasis added). Accordingly, Family House's license could be denied simply for its failure to make available Lawrence S.'s records or its failure to inform the Department of Lawrence S.'s presence.

We, therefore, vacate the Department's decision and remand the record to the Department so that it may reconsider whether the circumstances surrounding Family House's failure to disclose the presence of Lawrence S. constituted an act of omission or an act of commission, and to then conclude whether this single violation is sufficient to deny Family House's license.

ORDER

AND NOW, this 3rd day of May, 1989, the order of the Pennsylvania Department of Public Welfare in the above-captioned matter is vacated and the record is remanded for further findings consistent with this opinion.

Jurisdiction relinquished.