790 A.2d 291

Jarrett Carl SCOTT, Appellant,

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellee.**

**Mathew S. Liero, Appellant,**

v.

**Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, Appellee.**

**Robert P. Neenan, Appellant,**

v.

**Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing, Appellee.**

Supreme Court of Pennsylvania.

Submitted March 21, 2001.

Decided Feb. 20, 2002.

Alyssa Lopiano–Reilly, Anthony J. Martino, Bangor, for appellant.

Andrew S. Gordon, Harrisburg, John V. Rovinsky, Scranton, Timothy P. Wile, Harold Cramer, James M. Sheehan, Harrisburg, for appellee.

Before ZAPPALA, C.J., and CAPPY, CASTILLE, NIGRO, NEWMAN, SAYLOR and EAKIN, JJ.

## *OPINION*

NIGRO, Justice.

In these consolidated appeals, Appellants Jarrett Carl Scott, Mathew S. Liero and Robert P. Neenan appeal from the orders of the Commonwealth Court affirming the dismissal of their statutory appeals from a one-year suspension of their driver's licenses. At issue is whether the Pennsylvania De-

partment of Transportation, Bureau of Driver Licensing ("PennDOT") met its burden of proving that Appellants' convictions for violating New Jersey's driving while intoxicated ("DWI") statute, N.J.S.A. § 39:4–50(a), are substantially similar to conduct proscribed by Article IV(a)(2) of the Driver's License Compact ("Compact"), thereby justifying PennDOT's suspension of their licenses based on their New Jersey convictions. For the following reasons, we affirm.

Pennsylvania and New Jersey are both party states to the Compact, which is an agreement among more than forty states to promote compliance with each party state's motor vehicle laws.[1] Under Article IV of the Compact, each party state agrees that, if a person licensed in that state is convicted in another party state for an offense "substantially similar" to driving under the influence of alcohol or drugs to a degree that renders the licensee incapable of safe driving, then the party state must treat the out-of-state conviction as if it occurred in its own state for the limited purpose of determining whether to suspend that person's driver's license.[2] Article III of the Compact provides that:

1.  Pennsylvania became a party state to the Compact in 1996 by adopting Section 1581 of the Pennsylvania Vehicle Code. *See* Act of Dec. 10, 1996, P.L. 925, No. 149, § 4, *codified at* 75 Pa.C.S. § 1581; *Sullivan v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 550 Pa. 639, 708 A.2d 481, 485 (1998). Sections 1582 through 1586 of the Vehicle Code contain interpretive and administrative provisions related to the implementation of the Compact in Pennsylvania. *See* 75 Pa.C.S. §§ 1582–1586; *Harrington v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 563 Pa. 565, 763 A.2d 386, 389 n. 4 (2000). The New Jersey legislature adopted the Compact in 1966. *See* L.1966, c. 73, § 1, effective Jan. 1, 1967, *codified at* N.J.S.A. §§ 39:5D–1–39:5D–14.

2.  The relevant portions of Article IV read as follows:

    (a) The licensing authority in the home state, for the purposes of suspension, revocation or limitation of the license to operate a motor vehicle, shall give the same effect to the conduct reported, pursuant to Article III of this compact, as it would if such conduct had occurred in the home state in the case of convictions for:
    \* \* \*

    (2) driving a motor vehicle while under the influence of intoxicating liquor or a narcotic drug or under the influence of any other drug to a degree which renders the driver incapable of safely driving a motor vehicle;

The licensing authority of a party state shall report each conviction of a person from another party state occurring within its jurisdiction to the licensing authority of the home state of the licensee. Such report shall clearly identify the person convicted, describe the violation specifying the section of the statute, code or ordinance violated, identify the court in which action was taken, indicate whether a plea of guilty or not guilty was entered or the conviction was a result of the forfeiture of bail, bond or other security and shall include any special findings made in connection therewith.

75 Pa.C.S. § 1581, art. III. Under Pennsylvania's Vehicle Code, PennDOT must suspend for one year the operating privilege of a driver upon receiving a certified record of the driver's conviction for violating Pennsylvania's driving under the influence ("DUI") statute *or* a substantially similar offense reported to PennDOT under Article III of the Compact. *See* 75 Pa.C.S. § 1532(b)(3).[3]

\* \* \*

(c) If the laws of a party state do not provide for offenses or violations denominated or described in precisely the words employed in subdivision (a) of this article, such party state shall construe the denominations and descriptions appearing in subdivision (a) of this article as being applicable to and identifying those offenses or violations of a substantially similar nature and the laws of such party state shall contain such provisions as may be necessary to ensure that full force and effect is given to this article.

75 Pa.C.S. § 1581, art. IV(a)(2), (c).

3. Pennsylvania's DUI statute, 75 Pa.C.S § 3731, provides in relevant part:

(a) Offense defined.—A person shall not drive, operate or be in actual physical control of the movement of any vehicle in any of the following circumstances:

(1) While under the influence of alcohol to a degree which renders the person incapable of safe driving.

(2) While under the influence of any controlled substance ... to a degree which renders the person incapable of safe driving.

(3) While under the combined influence of alcohol and any controlled substance to a degree which renders the person incapable of safe driving.

(4) While the amount of alcohol by weight in the blood of:

(i) an adult is 0.10% or greater; or

(ii) a minor is 0.02% or greater.

75 Pa.C.S. § 3731(a)(1)-(4).

Appellants were arrested in New Jersey and subsequently convicted for violating New Jersey's DWI statute, which states that a person is guilty of DWI when he:

operates a motor vehicle while under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug, or operates a motor vehicle with a blood alcohol concentration of 0.10% or more by weight of alcohol in the defendant's blood or permits another person who is under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug to operate a motor vehicle owned by him or in his custody or control or permits another to operate a motor vehicle with a blood alcohol concentration of 0.10% or more by weight of alcohol in [his] blood.

N.J.S.A. § 39:4–50(a).[1] Pursuant to the reporting requirements of the Compact, New Jersey electronically transmitted to PennDOT reports detailing Appellants' DWI convictions.[5] In accordance with Article IV(a) of the Compact, PennDOT treated Appellants as if they had been convicted of violating 75 Pa.C.S. § 3731 and therefore, notified Appellants that their Pennsylvania operating privileges would be suspended for one year. Each Appellant subsequently filed a statutory appeal of his license suspension with the Court of Common Pleas. *See* 75 Pa.C.S. § 1550 (dealing with judicial review of license suspensions).

The trial courts conducted *de novo* hearings at which Penn-DOT offered documents into evidence, including copies of the New Jersey reports of Appellants' DWI convictions, which were admitted without objection.[6] The conviction reports

**4.** Scott was arrested on March 29, 1997, and convicted on July 7, 1997. Liero was arrested on June 23, 1997, and convicted on September 4, 1997. Neenan was arrested on May 18, 1997, and convicted on August 13, 1997.

**5.** The State of New Jersey, Division of Motor Vehicle's "Out of State Driver Violation Report" contains the following information: out-of-state license number; driver's name, date of birth, gender and eye color; summons number; violation date; New Jersey statute violated; conviction date; conviction offense reference number; conviction locator reference; and description of the offense.

**6.** The documents entered into evidence were duly certified and in conformity with 42 Pa.C.S. § 6103 (relating to proof of official records),

listed the New Jersey statute violated as "39:004–050A" and described Appellants' offenses as "operate under influence of liq/drugs." Appellants did not testify at the hearings or offer evidence on their behalf. Appellants conceded that they violated N.J.S.A. § 39:4–50(a), but asserted several legal challenges to the one-year license suspensions imposed by Penn-DOT, including a claim that their convictions under the New Jersey statute were not based on conduct substantially similar to that prohibited by Pennsylvania's· DUI statute.[7] At the conclusion of the hearings, the trial courts dismissed the appeals.

On appeal, the Commonwealth Court affirmed the trial courts' denials of Appellants' statutory appeals, concluding that PennDOT had properly suspended Appellants' driver's licenses ·pursuant to the Compact based on the conviction reports received from New Jersey. The Commonwealth Court found that the reference to N.J.S.A. § 39:4–50(a), coupled with the textual description of Appellants' offenses, i.e., "operate under influence of liq/drugs," provided sufficient information for PennDOT to determine that Appellants' New Jersey offenses were substantially similar to 75 Pa.C.S.

42 Pa.C.S. § 6109 (relating to photographic copies of business and public records) and 75 Pa.C.S. § 1550(d) (relating to documents received from other states).

7. In the courts below and on appeal here, Appellants framed this issue as a question of whether New Jersey's DWI statute is substantially similar to Pennsylvania's DUI statute. However, the proper analysis is set forth in *Petrovick v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 559 Pa. 614, 741 A.2d 1264, 1266 (Pa.1999), where we stated: "The Compact does not require a comparison of different states' drunk driving statutes. Rather, the relevant inquiry is whether each state's drunk driving provisions are 'of a substantially similar nature' to Article IV(a)(2) of the Compact." *Petrovick* did not create a new standard, but merely clarified "the appropriate analysis under Article IV of the Compact." *Id.*

As the lower courts did not have the benefit of *Petrovick* at the time they rendered their decisions in the instant case, the lower courts, like Appellants, analyzed the issue as whether New Jersey's DWI statute is substantially similar to Pennsylvania's DUI statute. Because the Compact does not call for a direct comparison of Pennsylvania's statute to an out-of-state statute, however, we will analyze the issue according to the Compact's requirements, i.e., compare each state's statute with Article IV(a)(2) of the Compact.

§ 3731(a) and therefore, that the conviction reports supported PennDOT's suspension of Appellants' licenses.[8]

We granted allocatur to consider Appellants' claims that there was insufficient evidence of record to support a finding that the New Jersey DWI convictions at issue involved conduct substantially similar to that proscribed by Article IV(a)(2) of the Compact so as to mandate PennDOT's one-year suspension of Appellants' driver's licenses. In reviewing these claims, we must liberally construe the Compact so as to effectuate its remedial purpose of promoting highway safety. *See* 75 Pa.C.S. § 1581, art. IX; *Commonwealth, Dep't of Transp. v. McCafferty,* 563 Pa. 146, 758 A.2d 1155, 1159 (2000). The Compact was enacted to promote compliance with the motor vehicle laws of all party states. *See* 75 Pa.C.S. § 1581, art. I. By adopting the Compact, our General Assembly decided to make the reciprocal recognition of driver licenses among the states more just and equitable by considering compliance with the motor vehicle laws in all party states a condition precedent to the continuance or issuance of a Pennsylvania license. *See* 75 Pa.C.S. § 1581, art. I(b). *See also Commonwealth v. Zimmick,* 539 Pa. 548, 653 A.2d 1217, 1222–23 (1995) (driving is a privilege, not a right; to obtain the benefit of such a privilege, a driver must abide by the laws of the Commonwealth relating to the privilege).

This Court has previously determined that Pennsylvania's DUI statute, 75 Pa.C.S. § 3731(a), is substantially similar to Article IV(a)(2) of the Compact, which proscribes driving

**8.** The appeals of Scott and Liero were consolidated below and the *en banc* Commonwealth Court issued a published opinion affirming the denial of their statutory appeals. *See Scott v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing,* 730 A.2d 539, 543 (Pa. Commw.1999). Judge Friedman dissented, joined by Judge Flaherty, concluding that the record lacked sufficient evidence to support a finding that Appellants' convictions for violating N.J.S.A. § 39:4–50 were based on conduct substantially similar to that proscribed by Pennsylvania's DUI law. *Id.* at 544 (Friedman, J., dissenting).

A three-judge panel of the Commonwealth Court issued a memorandum opinion in Neenan's case, citing the *en banc* court's opinion in *Scott* as the basis for affirming the denial of Neenan's appeal. *See Neenan v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing,* 738 A.2d 83 (Pa.Cmwlth.1999) (table).

under the influence of alcohol or drugs to a degree that renders the driver "incapable of safely driving a motor vehicle." In *Petrovick*, the Court examined the elements of Pennsylvania's DUI statute, specifically subsection 3731(a)(1), and concluded that it was substantially similar to Article IV(a)(2) of the Compact because both provisions focus upon individuals who are incapable of driving safely. *See Petrovick*, 741 A.2d at 1268. In addition, we have noted that the *per se* provision incorporated in subsection (a)(4) reflects a legislative determination that an individual with a blood alcohol concentration ("BAC") of .10 percent or greater is, as a matter of law, incapable of safe driving. *See Commonwealth v. Loeper*, 541 Pa. 393, 663 A.2d 669, 674 (1995) ("an accused is under the influence of alcohol to a degree that renders him incapable of safe driving as a matter of law if his BAC is .10% or greater"). Accordingly, "a DUI offense under subsection (a)(4) must also be construed as being substantially similar to that described in Article IV(a)(2) of the Compact." *Hoenisch v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 785 A.2d 969, 972–73 (Pa.2001). These cases make clear that 75 Pa.C.S. § 3731 is substantially similar to Article IV(a)(2) of the Compact and therefore, if a Pennsylvania driver is convicted in a Compact party state for conduct substantially similar to that proscribed by Article IV(a)(2), the Compact requires PennDOT to treat that out-of-state conviction as if it were a violation of 75 Pa.C.S. § 3731 for purposes of suspending that driver's license.

The issue then becomes whether the party state's statute under which Appellants were convicted is substantially similar to Article IV(a)(2) of the Compact. The New Jersey DWI statute prohibits four types of conduct:

1) Operating a vehicle under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug;

2) Operating a vehicle with a BAC of .10 percent or greater;

3) Permitting another person who is under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug to operate a car owned by him or in his custody or control; and

4) Permitting another person with a BAC of .10 percent or greater to operate a car owned by him or in his custody or control.

*See* N.J.S.A. § 39:4–50(a). The New Jersey courts regard N.J.S.A. § 39:4–50(a) as consisting of four separate offenses. *See State v. Hessen*, 145 N.J. 441, 678 A.2d 1082, 1089–90 (1996) (per curiam) (N.J.S.A. § 39:4–50(a) includes four specific offenses); *State v. Tischio*, 107 N.J. 504, 527 A.2d 388, 389 (1987) ("driving under the influence" provision and *per se* provision are separate offenses); Christopher H. Hall, Annotation, *Validity, Construction, and Application of Statutes Directly Proscribing Driving with Blood–Alcohol Level in Excess of Established Percentage*, 54 A.L.R.4th 149, at § 13(a) (1987) (New Jersey's drunk-driving statute creates multiple offenses).[9] Since N.J.S.A. § 39:4–50(a) provides for separate offenses within one statute, we must look to Appellants' underlying conduct to determine whether they were convicted of a particular provision of N.J.S.A. § 39:4–50(a) that is substantially similar to the Compact.[10] *See McCafferty*, 758 A.2d at

**9.** This Court recently recognized that conduct best described as an entirely separate offense, i.e., permitting another person to drive drunk, has been aggregated within New Jersey's general DWI statute. *Hoenisch*, 785 A.2d at 972 n. 5. As Mr. Justice Saylor cogently stated in *Hoenisch*:

Ideally, our analysis should focus upon the overall statute to determine whether it is substantially similar to the general provision set forth in the Compact, thereby enabling a facial determination of whether the entire statute aligns with the Compact. By so structuring the general statutes to include separate offenses, however, various state legislatures have effectively foreclosed a unitary analysis, relegating the courts to focus upon the substantial similarity to the Compact of the particular aspect of the general statute pursuant to which the licensee was convicted in each individual case. In addition to complicating judicial review, this legislative practice would appear to be inimical to the administrative interest in standardizing and streamlining reporting practices to achieve consistency, accuracy, and completeness in identification for purposes of license suspension.

*Id.* at 972 n. 5 (citing Driver's License Compact—Administrative Procedures Manual—1990 § 3.1.4.2 (U.S. Dep't of Transp.)).

**10.** For convenience, we will refer to the first two provisions of N.J.S.A. § 39:4–50(a) as "operating" offenses and to the third and fourth provisions as "permitting" offenses. *See generally Hessen*, 678 A.2d at 1089–

1164 ("it is the *conduct* underlying the conviction that triggers PennDOT's duties under the Compact").

Appellants claim that the New Jersey conviction reports in the instant case were insufficient to support the conclusion that they committed an offense substantially similar to that prohibited under Article IV(a)(2) of the Compact. In making this claim, Appellants place great emphasis on the fact that N.J.S.A. § 39:4–50(a), unlike the Compact, proscribes *permitting another person* to drive while intoxicated. In essence, Appellants argue that because the conviction reports referencing N.J.S.A. § 39:4–50(a) do not preclude the *possibility* that they were convicted of permitting another person to drive, the reports were insufficient to establish that they were convicted for conduct substantially similar to that prohibited under the Compact. We disagree.

As set forth above, for purposes of a reciprocal license suspension, Article IV(a)(2) of the Compact requires that the driver of a vehicle be impaired to a degree that he is incapable of safely driving. In the instant case, the description provided in the New Jersey conviction reports—"operate under influence liq/drugs"—clearly sheds light on the conduct underlying Appellants' convictions. New Jersey defines an "operator" of a motor vehicle as "a person who is in actual physical control of a vehicle." N.J.S.A. § 39:1–1. Moreover, the New Jersey courts have stated that the operating offenses of N.J.S.A. § 39:4–50(a) are separate and distinct from the permitting offenses of the statute. *See Hessen*, 678 A.2d at 1089–92. Based on these circumstances, the description in the conviction reports simply does not, as Appellants claim, leave any inference that Appellants violated either of the permitting offenses set out in N.J.S.A. § 39:4–50(a).[11] Thus, by the terms

92 (two offenses in N.J.S.A. § 39:4–50(a) do not involve operation of a vehicle and are therefore "permitting" offenses).

11. According to Appellants, the "description" data field of the New Jersey conviction reports simply contains the description that is stored in a computer's "statute file" for the statutory provision appearing in the "New Jersey Statute" data field. Thus, Appellants claim that *every* time a licensee violates *any* of the provisions of N.J.S.A. § 39:4–50(a), New Jersey's report will automatically describe the violation as "oper-

of the New Jersey reports, Appellants were convicted for operating a motor vehicle while under the influence rather than for permitting another person to drive drunk.

Furthermore, 75 Pa.C.S. § 1550(d) provides that the admission into evidence of an electronically transmitted conviction report from another state, which PennDOT certifies pursuant to 42 Pa.C.S. § 6103, constitutes *prima facie* proof of the facts and adjudication contained in that conviction report. Here, New Jersey's reports of Appellants' DWI convictions were electronically transmitted to PennDOT and therefore, their admission into evidence constituted *prima facie* proof of the facts set forth therein, including the description of Appellants' offense as operating a vehicle under the influence of liquor or drugs. As Appellants did not testify or offer any other evidence to prove that they were convicted of one of the "permitting" provisions of N.J.S.A. § 39:4–50(a), the evidence presented by PennDOT prevailed and the lower courts properly concluded that the conviction reports sufficiently communicated that Appellants were convicted of operating a vehicle while intoxicated. *See Commonwealth, Dep't of Transp., Bureau of Driver Licensing v. Tarnopolski*, 533 Pa. 549, 626 A.2d 138, 140 (1993) ("In a license suspension case, the only issues are whether the licensee was in fact convicted, and whether [PennDOT] has acted in accordance with applicable law. [PennDOT] carries the burden to produce a record of the conviction that supports the suspension"); *Pfeiffer v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 114 Pa.Cmwlth. 390, 539 A.2d 4, 5 (1988) (once PennDOT produces evidence of a conviction, the burden of proceeding shifts to the licensee to rebut or challenge PennDOT's proof); *see also*

---

ate under influence liq/drugs." Beyond this bald assertion, however, Appellants offer absolutely no evidence that the description for permitting another to drive drunk is the same as the description for operating a vehicle while intoxicated.

Appellants also argue that the description in the conviction reports merely sets out in short form the title of N.J.S.A. § 39:4–50(a). Appellants again fail to provide any evidence in support of their argument, which we find particularly puzzling in light of the fact that the legislature titled the statute "Driving while intoxicated," which is shorter than the description contained on the conviction reports.

*Harmon v. Mifflin County School Dist.,* 552 Pa. 92, 713 A.2d 620, 624 (1998) ("failure to testify to facts within one's presumed knowledge permits an inference that can erase the equivocal nature of other evidence relating to a disputed fact"); *Beers v. Muth,* 395 Pa. 624, 151 A.2d 465, 466 (1959) (party's failure to testify in a civil proceeding can give rise to an inference of fact that the party's testimony would have been adverse or unfavorable to him).[12]

We must therefore determine whether the operating provisions of N.J.S.A. § 39:4–50(a) proscribe conduct that is substantially similar to the Compact's requirement that a driver be "incapable of safely driving a motor vehicle." *See* 75 Pa.C.S. § 1581, art. IV(a)(2), (c). The difference in the language of the New Jersey statute and Article IV(a)(2) of the Compact is not the salient distinction in making this determination. *Petrovick,* 741 A.2d at 1271. Rather, it is the effect of the language in defining the scope of the conduct prohibited by each provision of N.J.S.A. § 39:4–50(a) that determines whether or not that provision of the statute is of a substantially similar nature to Article IV(a)(2). *See id.* In other words, the relevant inquiry is not only what New Jersey's DWI statute says, but how it is interpreted and applied. Thus, we

**12.** Given that Appellants were not convicted of a permitting offense, the permitting provisions of N.J.S.A. § 39:4–50(a) are not at issue in this case. Nevertheless, we note that those offenses appear to be outside the scope of the Compact. The permitting provisions of the statute do not require that the person charged with those offenses be operating a vehicle, nor be impaired to *any* degree. Instead, the permitting provisions of N.J.S.A. § 39:4–50(a) are predicated on the offender permitting *another person* to drive a vehicle while impaired. While this Commonwealth also punishes vehicle owners who permit others to drive their motor vehicles while under the influence of alcohol or controlled substances, *see* 75 Pa.C.S. § 1575, the Compact contains no similar restrictions.

We also note that our decision today in no way precludes a future licensee from offering evidence on appeal from a license suspension to prove that he was convicted of one of the permitting provisions of N.J.S.A. § 39:4–50(a) and arguing that the permitting offense is not substantially similar to the Compact. If PennDOT presents *prima facie* evidence that a Pennsylvania driver was convicted of violating an operating offense under N.J.S.A. § 39:4–50(a), however, it is the licensee's burden to come forward with evidence to show that he was convicted of a permitting offense.

must look to New Jersey case law for its interpretation of what conduct constitutes "under the influence" so as to warrant a DWI conviction in New Jersey. *See* 75 Pa.C.S. § 1581, art. IV(c); *Petrovick,* 741 A.2d at 1267, 1270.

In *State v. Tamburro,* 68 N.J. 414, 346 A.2d 401, 405 (1975), the New Jersey Supreme Court concluded that the language "under the influence" contained in N.J.S.A. § 39:4–50(a) means a substantial deterioration or diminution of one's mental faculties or physical capability, whether it be due to intoxicating liquor, narcotic, hallucinogenic or habit-producing drugs. The court made it clear that "[c]ompetency to operate a motor vehicle safely is the critical question." *Tamburro,* 346 A.2d at 405. Thus, the *Tamburro* court stated that to be guilty of driving while intoxicated in New Jersey, the evidence must show a driver was under the influence "to an extent that it materially affected his physical and mental faculties *and made it unsafe for him to operate a motor vehicle* on the highway." *Id.* (emphasis added).[13]

When comparing New Jersey's interpretation of "under the influence" with Article IV(a)(2) of the Compact, it is readily apparent that the first operating provision of N.J.S.A. § 39:4–50(a), which proscribes operating a vehicle while under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug, is substantially similar to the Compact. The Compact prohibits driving under the influence of alcohol or drugs to a degree that renders the driver "incapable of safely driving a motor vehicle". *See* 75 Pa.C.S. § 1581, art. IV(a)(2). This language is virtually identical to New Jersey's interpretation of the "under the influence" language contained

13. Furthermore, consistent with the policies underlying the Compact, the New Jersey courts have recognized that the primary purpose behind New Jersey's DWI statute is to curb the senseless destruction caused by drunk drivers. *See State v. Mulcahy,* 107 N.J. 467, 527 A.2d 368, 374 (1987) (legislature had in mind the prevention of accidents when it enacted its drunk-driving legislation); *Tischio,* 527 A.2d at 393 ("We are thus strongly impelled to construe the terms of N.J.S.A. 39:4–50(a) flexibly, pragmatically and purposefully to effectuate the legislative goals of the drunk-driving laws"); *Tamburro,* 346 A.2d at 405 (N.J.S.A.39:4–50(a) is addressed to the danger of operating a motor vehicle while under the influence).

in N.J.S.A. § 39:4–50(a). Thus, we conclude that the first provision of N.J.S.A. 39:4–50(a) is substantially similar to Article IV(a)(2) of the Compact.

The same can be said for the *per se* provision of N.J.S.A. § 39:4–50(a). New Jersey's *per se* provision merely reflects the legislature's determination that a driver with a BAC of .10 percent or greater is, as a matter of law, unable to operate a motor vehicle safely. *See State v. Hammond,* 118 N.J. 306, 571 A.2d 942, 947 (1990) ("The Legislature has thus made crystal clear that intoxication objectively determined by a breathalyzer test coupled with the operation of a motor vehicle constitutes the offense of drunk driving"); *Tischio,* 527 A.2d at 394 n. 5 (by enacting *per se* provision the legislature has declared that a BAC of .10 percent is the level at which any driver is a danger to the public). Accordingly, we also conclude that the second provision of N.J.S.A. § 39:4–50(a), which proscribes operating a vehicle with a BAC of .10 percent or greater, is substantially similar to Article IV(a)(2) of the Compact.[14] *Accord Hoenisch,* 785 A.2d at 973–74 (North Carolina's *per se* threshold of .08 percent BAC merely represents a legislative decision that such level of intoxication constitutes conclusive evidence of the inability to drive safely, and state laws need only be of a substantially similar nature to the Compact).

■ Although it is not completely clear from the record, it appears that Appellants were convicted for violating the first provision of N.J.S.A. § 39:4–50(a), i.e., operating a motor vehicle while under the influence of intoxicating liquor, narcotic, hallucinogenic or habit-producing drug. However, based on our decision today, PennDOT is required to suspend the

14. If we were to find that every conviction under N.J.S.A. § 39:4–50(a) is dissimilar to the Compact based solely on the fact that the statute contains permitting provisions, as Appellants argue, it would render invalid all Pennsylvania license suspensions based on convictions for violating N.J.S.A. § 39:4–50(a). This construction of N.J.S.A. § 39:4–50(a) would not only be completely contrary to the policies and purpose of the Compact, *see* 75 Pa.C.S. § 1581, art. I, but would permit Pennsylvania licensees convicted of drunk driving in New Jersey to avoid reciprocal license suspensions merely because New Jersey has chosen to incorporate more than one offense into its DWI statute.

license of any Pennsylvania-licensed driver convicted of violating either of the operating provisions of N.J.S.A. § 39:4–50(a) and the result would therefore be the same even if Appellants had been convicted of violating the *per se* provision of the statute. The relevant inquiry for purposes of a reciprocal license suspension is whether the Pennsylvania driver was convicted under one of the operating provisions of N.J.S.A. § 39:4–50(a).[15] If a New Jersey conviction report describes an offense under N.J.S.A. § 39:4–50(a) as "operate under influence liq/drugs," that description is *prima facie* evidence that the licensee was convicted under one of the operating provisions of the statute and therefore, PennDOT is required to suspend the driver's license pursuant to the Compact and 75 Pa.C.S. § 1532(b)(3). Accordingly, the order of the Commonwealth Court is affirmed.

---

15. In *Crooks v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 564 Pa. 436, 768 A.2d 1106 (2001), the trial court sustained Crooks' statutory appeal, stating that PennDOT failed to provide sufficient evidence to determine whether Crooks was convicted of violating the first or second provision of N.J.S.A. § 39:4–50(a). *See Commonwealth v. Crooks*, No. 00–00577, at 4 (CCP Chester Co. April 13, 2000) (memorandum). Thus, the trial court "[did] not even reach the issue of 'substantially similar.' " *Id.* at 5.

On appeal, this Court reinstated Crooks' license suspension. *Crooks*, 768 A.2d at 1109. In dicta, the Court recognized that the New Jersey conviction report failed to notify PennDOT of which subsection of N.J.S.A. § 39:4–50(a) was violated. *Id.* at 1108. However, relying on our recent decision in *Commonwealth, Dep't of Transp. v. McCafferty*, 563 Pa. 146, 758 A.2d 1155, 1158 (2000), the Court addressed the issue as one of constitutional due process and concluded that the deficiency in the conviction report was of no legal significance. *Crooks*, 768 A.2d at 1108–09. The Court found that there was no due process violation, explaining that Crooks was "essentially asserting a due process right to be obtuse." *Id.* at 1109 (citing *McCafferty*, 758 A.2d at 1163). Thus, although *Crooks* lends support to our conclusion regarding an appellant's burden to come forward and advise the court if he was convicted of one of the "permitting" provisions of N.J.S.A. § 39:4–50(a), *Crooks* does not control the specific issue raised by Appellants here.