**INTEGRATED BEHAVIORAL HEALTH SERVICES aka Sobriety Through Out Patient Inc., Petitioner**

**v.**

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 28, 2005.
Decided March 23, 2005.

---

Ronald J. Harper, Philadelphia, for petitioner.

Howard C. Ulan, Sr. Asst. Counsel, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, and SIMPSON, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SIMPSON.

Sobriety Through Out Patient, Inc., a new outpatient psychiatric clinic operated by Integrated Behavioral Health Services (Clinic), appeals the revocation of its license by the Department of Public Welfare (DPW). DPW revoked Clinic's license after it found Clinic fraudulently concealed a lack of required psychiatric hours at least twice. As DPW's determination is supported by substantial evidence, we affirm the license revocation.

DPW conducted its first inspection of Clinic in June 2001. At that time Clinic was not yet in operation; DPW inspected only the facility. DPW granted Clinic a six-month provisional license under the Public Welfare Code.[1]

In mid-November 2001, DPW again inspected Clinic for license renewal purposes. During this inspection, DPW determined Clinic did not have a psychiatrist present for the required minimum 16 hours a week.[2] Thereafter, Clinic submitted a plan of correction, signed and certified as true by its administrator, James Daniels. The administrator represented Clinic would provide the minimum number of hours "effective immediately" with a plan completion date of November 19, 2001. Based on Clinic's correction plan, DPW renewed its license.

Five months later, DPW inspected Clinic a third time. At that inspection, the same administrator presented the inspector with a staff rooster showing 20 hours of psychiatric time. The administrator's signature on the roster certified the information was "accurate and correct as of April 4, 2002." DPW issued Clinic a one-year license.

Upon receipt of a complaint six months later, DPW inspected Clinic a fourth time in October 2002. The inspection of Clinic's time sheets revealed Clinic did not have the required psychiatric hours.

Thereafter, the clinical director of Clinic, William Chenault, sent DPW a follow-up letter in mid-October 2002. In it, Chenault admitted Clinic failed to meet the 16 psychiatric hour requirement, listed reasons for the failure, and stated, by mid-September 2002, Clinic employed a psychiatrist for at least 16 weekly hours.

In January 2003, DPW notified Clinic it made a preliminary determination to revoke Clinic's license. DPW alleged Clinic committed fraud or deceit during the November 2001 and April 2002 inspections both orally and in writing in an effort to obtain a license in violation of the law. Clinic appealed to DPW's Bureau of Hearings and Appeals.

After two hearings, DPW's administrative law judge (ALJ) issued his adjudication. He reviewed the applicable law [3] and enforcement regulations.[4] The ALJ determined Clinic acted twice with fraud and deceit in its attempt to obtain a certificate of compliance. The first was in November

---

1. Act of June 13, 1967, P.L. 31, *as amended,* 62 P.S. §§ 1001–1031 (relating to certificates of compliance). *See also* 55 Pa.Code § 5200.45 listing physical facility regulations for an outpatient psychiatric facility.

2. 55 Pa.Code § 5200.23(c) provides:

 A psychiatric clinic is required to have at least 16 hours of psychiatric time per week to ensure minimally adequate care and supervision of all patients. Psychiatric hours shall be expanded when treatment staff exceeds eight FTE [Full Time Equivalent]. The ratio is two hours/week for each FTE treatment staff member.

3. 62 P.S. § 1026. Section 1026 is titled: **Refusal to issue license; revocation; notice.** Subsection (b)(2) provides, with emphasis added:

 (b) The department *shall* refuse to issue a license or *shall* revoke a license for any of the following reasons:
 (2) Fraud or deceit in obtaining or attempting to obtain a license.

4. 55 Pa.Code § 20.71, titled **Conditions for denial, nonrenewal or revocation,** states in pertinent part:

 (a) The Department may deny, refuse to renew or revoke a certificate of compliance for any of the following:
 (2) Noncompliance with the Department's program licensure or approval regulations.
 (4) Failure to comply with the acceptable plan to correct noncompliance items.
 (7) Fraud or deceit in obtaining or attempting to obtain a certificate of compliance.

2001 when the administrator made false statements which resulted in DPW's issuance of a provisional license. The second was the same administrator's verification of a staff roster in April 2002 that was later found to be fraudulent and deceitful. Moreover, the ALJ determined license revocation was warranted because Clinic failed to comply with its plan of correction by the October 2002 inspection.

 The ALJ's order recommended denial of Clinic's appeal. The Bureau's chief ALJ adopted the recommendation as a final order.[5] Clinic appeals.[6]

Clinic raises three challenges to DPW's order. First, Clinic claims DPW's order is not supported by substantial evidence of fraud and deceit. Second, Clinic contends a finding of fraud and deceit is not sufficient grounds for a license revocation. Third, Clinic argues DPW violated its due process rights by failing to notify it of the acts DPW considered before imposing the revocation penalty.

In support of its first argument, Clinic contends the only conclusion justified by the evidence was that the psychiatrist it first employed, Dr. Cheryl Hunter, did not work her contracted hours. Clinic also admits its record keeping was "probably remiss." Once it became clear Dr. Hunter was unwilling to meet her contractual obligations, Clinic hired another psychiatrist in September 2002.

Clinic argues the facts from the hearings did not support the charge it committed fraud or deceit. Citing the elements of fraud, Clinic asserts there was no evidence it made a knowing or reckless false representation. It contends its failure to provide sufficient hours of psychiatric care was the result of personnel problems with Dr. Hunter.

Clinic also relies on a Commonwealth Court opinion where it was unclear if the failure of the regulated institution to make full disclosure was an act of omission or commission. *Arcurio v. Dep't of Public Welfare*, 125 Pa.Cmwlth. 557, 557 A.2d 1171 (1989). Clinic concludes the evidence here "strongly suggests" its failure to provide the required hours of psychiatric care was an act of omission.

DPW concedes the lack of psychiatric hours alone does not prove fraud. However, DPW revoked Clinic's license because its lack of psychiatric hours was coupled with Clinic's misleading documents. DPW contends the administrator twice created documents representing to DPW that Clinic complied with the required 16 hours of psychiatric time, though it later admitted it had less. DPW asserts this is substantial evidence of fraud or deceit in obtaining a license.[7]

 "Fraud" is a generic term which embraces a great variety of actionable wrongs and may be actual or constructive accordingly as it is knowingly or innocently made. *Matter of Estate of Evasew*, 526

---

5. After the Secretary of Public Welfare granted Clinic's request for reconsideration, she upheld the order.

6. This Court's review of a DPW determination is to determine whether constitutional rights were violated, an error of law was committed, or findings of fact were not supported by substantial evidence. *B.T. and (B)'s Play and Learn Day Care Ctr. v. Dep't of Public Welfare*, 828 A.2d 436 (Pa.Cmwlth.2003), *appeal denied*, 577 Pa. 698, 845 A.2d 819 (2004).

7. DPW also points to the overwhelming circumstantial evidence of fraud. It notes the fact that Clinic presented no witnesses can give rise to an adverse inference. *Scott v. Bureau of Driver Licensing*, 567 Pa. 631, 790 A.2d 291 (2002) (a party's failure to testify can give rise to an inference that the party's testimony would have been adverse to him).

Pa. 98, 584 A.2d 910 (1990). Generally, "fraud" consists in anything calculated to deceive, whether by a single act or combination, or by suppression of truth, or a suggestion of what is false, whether it be by direct falsehood or innuendo, by speech or silence, word of mouth, or look or gesture, and it is any artifice by which a person is deceived to his disadvantage. *In re McClellan's Estate*, 365 Pa. 401, 75 A.2d 595 (1950).

■ Intent, like any other matter, may be proved by circumstantial evidence, that is, by inferences that reasonably may be drawn from the facts and circumstances. Pa. SSJI (Crim) § 7.02B, citing *Commonwealth v. Williams*, 468 Pa. 357, 362 A.2d 244 (1976). Here, several circumstances support an inference of culpable state of mind: the duration of misleading, spanning 11 months and several inspections; the repetition of false information; the failure to correct the utterances until after falsity was discovered; and, the motive of obtaining and retaining a license. Taken together, these circumstances support the inference of a culpable state of mind.

The other elements of fraud are clearly present. Indeed, there is no serious contest that the information as to the psychiatrist hours was false, was offered to induce licensure, and was relied upon by DPW. Considering the foregoing, we discern no error in the conclusion that Clinic committed fraud or deceit.

■ As for Clinic's second challenge, it is beyond debate that Section 1026 of the Public Welfare Code specifically provides that fraud or deceit in obtaining a license shall result in revocation. 62 P.S. § 1026(b)(2); *see Colonial Gardens v. Dep't of Health*, 34 Pa.Cmwlth. 131, 382 A.2d 1273, 1276 n. 6 (1978) (alteration of medical records during the course of a licensing survey in order to produce appearance of compliance constitutes fraud or deceit in attempting to obtain a license);

*Aaron's Boarding Home v. Dep't of Public Welfare*, 116 Pa.Cmwlth. 210, 541 A.2d 63, 65 n. 3 (1988) (dictum). Clinic's reasons for inadequate psychiatric hours are for the fact finder's assessment.

Third, Clinic's lack of notice due process claim is frivolous. Clinic asserts it assumed DPW was investigating its admitted personnel problems and flawed record keeping. However, Clinic admitted it received DPW's preliminary determination five months before the first hearing. The determination and its attachments contained the factual basis for DPW's charges.

As part of its due process challenge, Clinic suggests it was misled as to the availability of Dr. Hunter as a witness. During the second hearing, Clinic thought DPW planned to present the telephonic testimony of Dr. Hunter. Clinic was surprised DPW did not have Dr. Hunter telephonically available.

Because Clinic admitted Dr. Hunter did not work 16 hours, DPW had no need to present her testimony. We note Clinic did not subpoena Dr. Hunter or otherwise arrange for her testimony during the two hearings. DPW is not responsible for securing Clinic's proof.

This Court is aware of the valuable services afforded at facilities such as Clinic here. However, Clinic's breach of trust impairs its ability to work with DPW. Because Clinic's arguments lack merit, we affirm the order of DPW.

### ORDER

AND NOW, this 23rd day of March, 2005, the order of the Department of Public Welfare in the above-captioned matter is **AFFIRMED.**

Senior Judge FLAHERTY dissents.